THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE LIFE UNION, Defendant.

HARRIET A. PINDELL and Another, Appellants; THOMAS ASHWORTH and Others, Respondents.

*Distribution of the reserve fund of a life insurance company — when death claimants have no interest therein.*

It was apparent from the provisions of the constitution and by-laws of, and the certificates of membership issued by, a life insurance corporation, that the reserve fund thereof was created primarily for the benefit of the members of the association, and was to be used exclusively for their benefit, although such fund, except that portion of it represented by paid-up certificates, might be used to pay losses in excess of the mortality tables.

*Held,* that such fund was divisible among the living members of the association, and that death claimants had no interest therein.

APPEAL by Harriet A. Pindell and another from portions of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of October, 1894, confirming the report of a referee,

except in so far as said report assumes to charge an officer of the defendant with misfeasance, overruling the appellants' objections thereto, and directing the distribution of the reserve fund of a life insurance corporation, and also from an order, made at the New York Special Term and entered in said clerk's office on the 17th day of October, 1894, denying the appellants' application to have the report of the referee and of the actuary re-committed severally to such referee and actuary, and also from an order, made at the New York Special Term and entered in said clerk's office on the 14th day of November, 1894, denying the appellants' motion for an order directing the receiver to commence an action against the directors of the defendant.

*R. J. Moses*, for the appellants.

*E. L. Mooney* and *M. P. O'Connor*, for the respondents.

VAN BRUNT, P. J.:

What this action was brought for does not appear from the record herein, as the pleadings are not set forth. It seems, however, that on the 27th of February, 1894, an order of reference was made to examine the account of a receiver who seems to have been appointed in this action, and to hear the allegations and proofs of such persons as might appear before the referee with reference to the distribution of the fund in the hands of the receiver, known as the reserve fund, and to report to the court what disposition should be made of said reserve fund, in his opinion.

Subsequently the referee reported that as between the two classes of claimants to the reserve fund, the representatives of deceased certificate holders and the living members, including in the latter class the representatives of those who had died since the commencement of these proceedings, the living members or their representatives were, in his opinion, entitled to the fund proportionately to the gross amount of assessment paid by them respectively.

It is this conclusion of the referee which it is necessary for us to consider. Upon the coming in of the report, exceptions were duly filed, which were overruled so far as this question was concerned, and the report confirmed, and this appeal was taken from so much of said order. A motion was also made to send the report

back to the referee, which was denied, and from that order an appeal was also taken. It is admitted upon the part of the appellants that, if the action of the court upon the appeal first above mentioned should be upheld, there would be no necessity for referring back the report of the referee. The referee based his decision upon the decision of the Court of Appeals in *The Matter of the Equitable Reserve Fund Life Association* (131 N. Y. 371). That association was somewhat similar in character to the one at bar and had a similar reserve fund; and the question involved was as to its disposition. It was there held that the rights of the parties were to be decided with reference to the constitution and by-laws of the association and the contents of the certificates of membership, all of which, taken together, formed the contract between the company and the certificate holders.

The questions presented are substantially the same as those before the court in the case cited, with one exception, which will be noticed hereafter. It appears from the report of the referee that the certificate of incorporation of the Life Union was filed on the 11th of June, 1885, in the office of the clerk of the city and county of New York, under the law then in force (Chap. 175, Laws of 1883), and the association commenced its business on the co-operative or assessment plan in this city shortly thereafter, the first policy having been issued on the 22d of August, 1885. The charter provided that all moneys collected for the reserve fund should be deposited with a trust company, designated by the board of directors, as a trust fund, for the sole benefit of the members of the Life Union. No moneys so deposited should be withdrawn, except upon the order of the president, treasurer and secretary, for such purposes as should be provided for in the by-laws and in conformity with the terms and conditions controlling the trust fund.

Upon the 11th of June, 1885, the association adopted the following by-laws:

"ARTICLE XII.  RESERVE FUND.

"SECTION 1. Fifteen (15) per cent of all net assessments for Mortuary and Benefit purposes, with accretions, shall be deposited with such trust company as may be designated by the directors, as a trust fund, for the exclusive use and benefit of the members of the Union.

" SECTION 2. The reserve fund, except that portion represented by paid-up certificates, may be used to pay losses in excess of the American experience table of mortality.

" SECTION 3. After five years from the thirty-first day of December, 1885, and each year thereafter, a dividend from that portion of the reserve fund created the first year of each series of five years shall be made to all members whose certificates have been in force continuously for that period, which amounts shall be credited to their account and used in payment of future dues and assessments.

" SECTION 4. Such amounts as may be required to meet paid-up certificates, as provided in section 5 of article VIII, shall not be used for any other purpose.

" SECTION 5. Any portion of the reserve fund not otherwise required may be loaned to pay claims under section 2 of article VIII, as therein provided."

Section 5 of article VIII is as follows: " Any member of the Union whose certificate has been in force for ten or more consecutive years shall have the option of surrendering the same and receiving therefor a paid-up certificate for such equitable proportion of the reserve fund as may appear to his credit on the books of the Union."

The accumulation of the trust fund commenced in 1886, and an agreement was made on the twelfth of April of that year between the Life Union and the Knickerbocker Trust Company, by which the latter agreed to hold and invest the funds deposited with it, the material portions of which agreement read as follows: " *Third.* Upon receipt of a certified copy of a vote of the board of directors of said Union, authorizing the transfer of any portion of the reserve fund *above mentioned to the death fund account,* such transfer shall be made by said Trust Company. But in every case the resolution of the board of directors authorizing such transfer shall state that such transfer is authorized by sections II, III, IV and V of article XII of the by-laws of the Union.

" *Sixth.* In case of a dissolution of the party of the first part (the Life Union), the entire reserve fund shall be divided among the then members of the Union proportionately to the gross amount of assessments paid by said members respectively to said Union, in

accordance with a statement which shall be furnished by the party of the first part and certified to by their board of directors, prior to said dissolution, as correct, or shall be distributed in such other equitable manner as the courts shall direct."

The certificates of membership which were in general use and which are to be considered in the disposition of this appeal read as follows:

" Within ninety days after the receipt of satisfactory proof to the Union of the death of the above-named member, while this certificate remains in force, upon the following conditions: There shall be payable to ——— of ———, State of ———, if living at the time of said death, otherwise to the legal representatives of said member, less such amounts as may have been advanced in final sickness, the sum of ——— thousand dollars, from the mortuary and benefit fund of the Union, at the time of said death, or from any moneys that shall be realized to the said fund from the next assessment to be made *as hereinafter set forth*, it being understood and agreed that not more than one assessment shall be made for each death loss.  *  *  *

" 1. It is understood and agreed that whenever a loss occurs in the membership of the Union, either by death or permanent disability, and the amount in the mortuary and benefit fund is insufficient to meet the same, an assessment may be made upon all the holders of certificates in force at the time of such loss according to the age of each member at the time of admission and the amount of his certificate, as per table indorsed hereon. Eighty-five per cent of the net amount realized from each assessment shall constitute the mortuary and benefit fund of the Union, hereinbefore referred to, and shall be used only for the payment of approved losses, as above provided.

" 2. Fifteen per cent of all net assessments, with the accretions thereon, shall constitute a reserve fund, which shall be deposited with a trust company as a trust fund, for the exclusive use of the members of the Union.

" 4. At the expiration of five years from the 31st day of December next, and each year thereafter, all that portion of the reserve fund created the first year of the series of five, will be divided *pro rata* to the amount contributed amongst those certificates which

have been in force five or more years, and placed to their credit, to be used in payment of dues and assessments as they occur.

"6. The reserve fund, not represented by dividends declared or amounts necessary to meet paid-up certificates, may be used to pay losses in excess of the American Experience Table of Mortality."

The by-laws of 1887, as amended and adopted on June 21, 1887, provide as follows:

"ARTICLE VII. BENEFITS.

"SECTION 1. Upon the death of a member, the Union shall, within three months after due notice and satisfactory proofs of such death, pay to the beneficiary named on the books of the Union, if such beneficiary be living at the time of such member's death, otherwise to the heirs or legal representatives of such deceased member, the amount to which the same may appear entitled, according to the terms of the certificate of membership, out of the mortuary and benefit fund (hereafter defined) of the Union; or if the mortuary and benefit fund shall then be insufficient to pay the whole of any such claim, then out of the moneys to be realized from the next assessment to be made, as hereinafter described. And no death claim shall become otherwise due or payable except from the Reserve Fund, as hereinafter provided.

"ARTICLE XI. MORTUARY AND BENEFIT FUND.

"SECTION 1. Eighty-five (85) per cent of all net assessments for mortuary purposes shall be deposited with such bank or trust company, as may be designated by the directors, to the credit of the mortuary and benefit fund of the Life Union, from which claims shall be paid."

"ARTICLE XII. RESERVE FUND.

"SECTION 1. Fifteen (15) per cent of all net assessments for mortuary and benefit purposes, with accretions, shall be deposited with such trust company, as may be designated by the directors, as a trust fund for the exclusive use and benefit of the members of the Union.

"SECTION 2. The reserve fund, except that portion represented by paid-up certificates, may be used to pay losses in excess of the American Experience Table of Mortality.

" SECTION 3. After the reserve fund shall have reached the sum of $100,000, the accumulations over that amount shall be annually divided among the members of five or more years' standing, and placed to their credit to meet future dues and assessments, or shall be applied to pay death claims, as may be determined by a vote of the members at that time."

After the adoption of these by-laws the certificates of membership were amended, and in 1892 the by-laws were further amended.

In view of the decision in the case above referred to of *The Matter of the Equitable Reserve Fund Life Association,* it does not seem necessary to discuss the rights which were conferred by these by-laws, except so far as they may differ from those in the case cited. In *The Equitable Reserve Fund Life Association* action a section of one of the articles of the constitution permitted the board of trustees, *in their discretion,* to use the securities in which the moneys forming the reserve fund had been invested, for the purpose of making any deposits required or allowed by law or usage of this or other States, or to meet the want or necessity of the association that might thereafter arise by reason of unforeseen contingencies ; and the court held that this section, although somewhat obscure, evidently referred to a want or necessity which might arise by reason of unforeseen contingencies, and while the company is alive and in the hands of its board of trustees, because the question of the application of the securities was to be decided by such board. The provisions which are contained in the by-laws, etc., of the corporation now under consideration are, that the reserve fund may be used to pay losses in excess of the American Experience Table of Mortality, evidently reposing the discretion as to whether the fund shall be thus used or not in the corporation. Where such discretion is reposed in the corporation, it must be exercised by its board of directors, and was evidently intended only to apply, as in the case cited, to a living corporation ; the action to be taken while the corporation was in the exercise of its powers and duties, and not by a dead corporation.

Taking the provisions of the constitution, the by-laws and the certificates of membership together, it seems to be apparent that this reserve fund was created primarily for the benefit of the members of the association. The provisions of article 12 of the constitution,

which provided for the institution of this fund, show that it was to be for the exclusive use and benefit of the members of the association, and that the reserve fund, except that portion represented by paid-up certificates, "may be used to pay losses in excess of the American Experience Table of Mortality."

It seems to us, if the reasoning of the Court of Appeals in the case cited is correct, it is entirely applicable to the case at bar, and death claimants have no interest in this fund. Although this view of the object of the reserve fund was contrary to that which was held by this General Term, when the case of *The Equitable Reserve Fund Life Association* was before us, not being able to see any practicable distinction between the two cases, we are compelled to follow the adjudication of the court of last resort.

The orders appealed from should be affirmed, with costs.

O'BRIEN and PARKER, JJ., concurred.

Orders affirmed, with costs.