(18 Misc. Rep. 257.)

FARMERS' LOAN & TRUST CO. v. ABERLE et al.

(Supreme Court, Special Term, New York County. October, 1896.)

1. MUTUAL INSURANCE—RESERVE FUND—BENEFICIARIES.
   A "reserve fund" of a mutual insurance company held in trust for division, on dissolution of the company, among its "then" members, is for the benefit of living members at the time of such dissolution.

2. SAME—CHANGING BY-LAWS—QUORUM.
   In absence of statute or a by-law provision, a number less than one-half of the members of a mutual insurance company do not constitute a quorum, and changes made in by-laws at such a meeting are void.

3. SAME—DELEGATED POWERS.
   Power given a board of directors to vote for absent members of a mutual insurance company involves discretion, and cannot be delegated in the absence of authority.

4. SAME—DIVERTING RESERVE FUNDS—VESTED RIGHTS.
   An amendment of by-laws of a mutual insurance company diverting a reserve fund from the purpose of its creation, without the consent of the members interested in the fund, is an interference with vested rights of such members, and therefore void.

5. SAME—RECEIVERS—RIGHTS OF TRUSTEES.
   A dissolution of a mutual insurance company, and the appointment of a receiver of its property, do not destroy a trust fund created for the benefit of certain members, nor take away from the trustees the right to administer it.

Action by the Farmers' Loan & Trust Company, as trustee, against Daniel Aberle and others, to obtain a determination as to who are entitled to trust funds held by plaintiff, and for direction as to the distribution of the funds.

David McClure, for plaintiff.

Edmund Luis Mooney, M. P. O'Connor, Adrian T. Kiernan, Henry D. Hitchcock, Hector M. Hitchings, Robert Gibson, Jr., and C. Carskaddan, for living members.

Raphael J. Moses and Arthur S. Luria, for death claimants.

Henry W. Sackett, for receiver.

SMYTH, J. This action is brought to obtain a judicial settlement of the accounts of two funds held by the plaintiff under two trust agreements between the Mutual Benefit Life Association of America and the Farmers' Loan & Trust Company, the plaintiff in this action, and for a determination by the court as to who are entitled to said funds, and for a direction as to their distribution.

The Mutual Benefit Life Association of America was originally organized as a co-operative insurance company in the year 1882, and afterwards reincorporated in the year 1889, under acts of the legislature of this state passed April 2, 1883, and May 6, 1887. On the 8th of September, 1894, an action was brought by the people against the association, to dissolve it, and judgment was entered therein on the 20th of October following, by which judgment the corporation was dissolved, and Mr. Samuel Milbank was appointed and qualified as receiver of its property, and, claiming to be entitled to the funds in the hands of the plaintiff, and the right to distribute said funds under

the direction of this court, he was made a party defendant to this action.

The trust agreements under which the plaintiff holds the funds in question bear date, respectively, February 15, 1884, and December 5, 1885. The by-laws of the association in force at the date of the execution of both agreements provided for the creation and disposition of two funds designated as "the mortuary fund" and "the reserve fund." Both of these funds were the proceeds of all assessments received by the association from its members, 80 per cent. of which the by-laws provided should be deposited to the credit of the mortuary fund, which was to be exclusively used in the payment of approved death claims, and the remaining 20 per cent. of such assessments should be deposited to the credit of the reserve fund in a trust company, to be designated by the board of directors of the association, in accordance with the terms expressed in the deed of trust between the association and the trust company, and the interest on the same as it accrued should be placed by the trustee to the credit of the reserve fund, and that said fund above $100,000 might be applied to the payment of death claims in excess of the American Experience Table of Mortality, and when, under such circumstances, any claim by death is due, to the making up of any deficiency that might exist in the mortuary fund; and expressly provide that the moneys so received should be deposited, with the accruing interest thereon, specifically to the credit of the mortuary and reserve funds. The plaintiff, having been duly designated trustee of the reserve funds, accepted the trusts so created. The first payment to the reserve fund created under the first agreement was made to the trustee on the 15th of February, 1884, the date of the first agreement, and the last on the 25th of July, 1885. Thereafter all payments to the reserve fund were made to the trustee under the second agreement.

The provisions contained in both trust agreements, respectively, as to the investment of the reserve fund by the trustee, are substantially the same, and the only provision made for the disposition of the reserve fund is to be found in the sixth clause of the first and the tenth clause of the second agreement. The sixth clause of the first agreement provides that, in case of dissolution of the association, the entire reserve fund, less the expenses of the trustee, shall be divided among its then members, proportionately to the gross amount of assessments paid by them, or be distributed in such other equitable manner as the courts shall direct. The tenth clause of the second agreement provides that, in case of the dissolution of the association, the entire reserve fund, less the necessary legal expenses of the trustee, should, after the payment of all death losses or other indebtedness for which the association shall then be liable, be divided among the then members of the association in proportion to the gross amount of assessments paid by them, or should be distributed in such other equitable manner as the courts shall direct.

The claimants to both of the reserve funds may be divided into four classes: (1) Members of the association who were living at the time of its dissolution; (2) representatives of members of the

association who were living at the time of its dissolution, and who died since its dissolution; (3) representatives of former members of the association who died prior to the dissolution; and (4) the receiver appointed in the action brought by the people to dissolve the association.   The first and second classes insist that they alone are entitled to have both funds distributed among them, to the exclusion of the third class of claimants; which latter class insist that they are alone entitled to said funds, to the exclusion of the first and second classes of claimants; and the receiver insists that he is entitled to said funds for the purpose of distribution among such persons as the court shall determine are entitled thereto.   The main questions to be determined seem to be:   (1) To whom do the trust funds in question belong? and (2) is the plaintiff, in whose hands, as trustee, the funds now are, entitled to distribute them to those whom the court determine are entitled thereto, or is the receiver in the people's action entitled to have said funds transferred to him by the plaintiff for the purpose of distribution under the direction of this court?

That the constitution, by-laws, and the contents of the certificates of membership in the Mutual Benefit Association of America, taken together, form the contract between the association and its members, by which the rights and liabilities of the parties are to be determined, is now the settled law of this state.   In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114;  People v. Life Union, 83 Hun, 598, 31 N. Y. Supp. 1120, affirmed 145 N. Y. 606, 40 N. E. 164.   Reference must therefore be had to the charter, by-laws, and certificates of membership of the association to ascertain what the contract between the association and its members is in reference to the reserve funds in question, and what are the respective rights and interests of the parties to the contract in said funds.   The certificate of reorganization of the association contains a provision to the following effect:   That the certificates of membership shall be in the form prescribed by the board of directors, and shall contain the specified terms of the agreement between the association and its members; and the by-laws adopted November, 1883, provide that 80 per cent. of all assessments should be deposited to the credit of the mortuary fund, to be exclusively used in the payment of death claims, and the remaining 20 per cent. should be deposited to the credit of the reserve fund with a trust company, to be designated by the board of directors, and in accordance with the terms of the deed of trust between the association and the trust company, and that the interest accruing thereon should be placed to the credit of the reserve fund, and that the reserve fund above $100,000 might be applied to the payment of death claims in excess of the American Experience Table of Mortality; and when, under such circumstances, any claim by death is due, to the making up any deficiency that might exist in the mortuary fund, and, if none of such contingencies should arise, the association being purely mutual, at the expiration of 10 years, and each year thereafter during the continuance of the certificate of membership, an equitable division of said fund, with accumu-

lated interest, should be made, and an equitable proportion thereof credited to each certificate in force on the books of the association, and be applied to the payment of future dues and assessments under said certificate. Provision is also made, in the event of the mortuary fund becoming insufficient to meet existing death claims, to make an assessment upon the holders of membership certificates to make up such deficiency; the moneys received therefrom, less 20 per cent. thereof, to be set apart to the reserve fund, and be exclusively used in the payment of approved death claims. The certificates of membership issued by the association also contain provisions as to the reserve fund, which are substantially as follows: From each assessment received by the association 20 per cent. shall be set aside and constitute a reserve fund, which shall be deposited with the trust company, and to be securely invested in United States bonds and mortgages, or other interest-bearing securities, by the said trust company, as trustee, for the exclusive benefit of the members of the association; and that the reserve fund above $100,000 may be applied to the payment of claims in excess of the American Experience Table of Mortality, and when, under such circumstances, any claim by death is due, to the making up of any deficiency that may then exist in the mortuary fund.

It thus appears that by the terms of the contract between the association and its members provision is made for the creation of the mortuary and reserve funds. The proceeds of the mortuary fund were to be applied exclusively to the payment of approved death claims, and that the reserve fund was intended for the exclusive use and benefit of living members of the association, subject only to the right to apply the excess over $100,000 of said fund, upon the happening of certain specified contingencies, to any deficiency in the mortuary fund, but in no event could the reserve fund, below $100,000, be otherwise appropriated to any purpose other than for the exclusive benefit of living members of the association, for whose benefit it was created. It is claimed, however, on the part of the representatives of deceased members of the association, who died prior to its dissolution, that the by-laws were amended so as to permit the whole of both of the reserve funds to be applied, in the discretion of the board of directors, to the payment of death claims against the association, which claims, previous to such amendment, were payable exclusively out of the mortuary fund; and it is insisted that by virtue of such amendment both of said funds were lawfully appropriated to the payment of their claims, and, that being so, that they are now entitled to have said funds distributed among them. Objection to this claim is made by the members of the association who were living at the time of the dissolution, and by the representatives of such members who died since its dissolution, upon the ground that the action taken for the purpose of amending the by-laws at the annual meeting of the association was not authorized by the charter and the then-existing by-laws of the association, and that such action was in violation of existing contracts between the associa-

v.41 N.Y.S. no.8—41

tion and its members, and that the subsequent action of the board of directors, whereby it' was attempted to transfer the reserve funds in question to the mortuary fund of the association, was also unauthorized by the charter and the then existing by-laws, and was, therefore, void. The original and amended charter of the association provided that the board of directors should have the entire control and management of all the business concerns of the association, and conferred upon that board the power to adopt and amend such by-laws as that board should deem necessary; but no such power is conferred thereby upon the association. The by-laws adopted subsequently to the charter contain a provision for their amendment by the members of the association, but, this power having been expressly reserved to the board of directors by its charter, it would seem to follow that the by-law was inoperative, unless authority was conferred by statute upon the association as a body to vote upon the adoption or amendment of its by-laws. Be that as it may, and assuming that the members of the association had such right, the evidence shows that a majority of all the members of the association were not present at the meeting in question, and, the by-laws not providing that less than half of all the members should constitute a quorum, and in the absence of a statute or by-law providing that less than one-half of all the members of the association should constitute a quorum for the transaction of all business of the association, I am of the opinion that a less number than one-half of all the members could not constitute a quorum.

But it is further claimed that the members of the association who were absent from the meeting were represented by the board of directors, and that a quorum of all the members was, therefore, present, and that said board lawfully voted in their behalf upon the amendment. This claim is based upon the certificate of incorporation and the by-laws then in force, reference to which does not, in my opinion, sustain this claim. The power to represent absent members and vote in their behalf was expressly conferred upon the board of directors as a body, provided that such board, acting as a body, deemed it necessary to do so to preserve the interest and security of the association as set forth in the certificates of such absent members. But no provision can be found, either in the certificate of incorporation or by-laws or in the certificates of membership, by which the board of directors was authorized to delegate these powers to anyone. The board of directors, however, attempted to do so by the passage of a resolution prior to the meeting in question, in and by which they designated James T. Smith, or, in his absence, James C. Peabody, or either of them, to deliver to the teller ballots deposited by said board, and especially directed Smith and Peabody, or either of them, to deposit a ballot or vote in such absent member's stead in favor of the proposed amendment to the by-laws. The powers conferred upon the board of directors to represent and vote in behalf of absent members of the association clearly involved the exercise of discretion and judgment, and could not, in my opinion, be delegated, except under an express grant of authority, of the existence of which there is no proof; nor do the minutes of the pro-

ceedings of the meeting show that Smith and Peabody, or either of them, exercised or attempted to exercise the power claimed to have been conferred upon them.    But, assuming an amendment to the by-law was adopted so as to divert the reserve funds from the purpose for which they were created, and place them under the control of the board of directors, to be applied in their discretion to another and different purpose, it would nevertheless be void, because, in effect, it operated to change the definite and absolute contract existing between the association and its members made prior to the adoption of said amendment, and make an essentially new one, and one by which the members of the association might, and without their consent, be deprived of all the benefits and advantage which, under existing contracts, were vested rights in said funds, and was, therefore, a violation of well-established principles of law.    Weiler v. Aid Union, 92 Hun, 277, 36 N. Y. Supp. 734; 1 Mor. Priv. Corp. § 496; Kent v. Mining Co., 78 N. Y. 159.    The minutes of the meeting of March 14, 1894, do not show that Messrs. Smith or Peabody voted in behalf of absent members for the proposed amendments, but they do show that 107 out of a total membership of upwards of 1,300 were present and voted upon the proposed amendments.    The evidence also shows that it was publicly stated by the officers of the association at said meeting that the amendment would not be operative, or affect the funds then in the hands of the trustee, unless all the members of the association released their respective interests therein, and was so understood by such members as well as by the officers of the association.    It also appears that such releases were subsequently prepared by the officers of the association, and that some of the members declined to execute them.    Yet, notwithstanding these facts, the board of directors proceeded to act under the amendment, and on the 6th of June, 1894, adopted a resolution, the effect of which would be to transfer $75,000 of the reserve fund held under the trust agreement of December 5, 1885, to the mortuary fund; and at a subsequent meeting, held on the 6th of September, 1894, another resolution was adopted, the purpose of which was to transfer the whole reserve fund in the hands of the trustee to the mortuary fund.    The trustee declined to comply with either resolution.    It also appears that when these resolutions were adopted the association was actually insolvent, and in fact ceased to be a "going institution," and on the 8th of September, 1894, the action for its dissolution was commenced by the attorney general.

Having arrived at the conclusion that the attempted amendment of the by-laws was illegal and void, it necessarily follows that the action of the board of directors to effect a transfer of the reserve funds to the mortuary fund pursuant to such amendment was also illegal and void, and in no way affected the rights and interests of members of the association entitled thereto under their respective contracts with the association.    Both of said funds should therefore be distributed among those members of the association who contributed to each fund, and who were living at the time of its dissolution, and to the representatives of such members who have since

died, in proportion to the gross amount of assessments paid by them, respectively, to each of said funds; and that the representatives of deceased members of the association who died before its dissolution have no interest in either fund. In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 67; People v. Life Union, 83 Hun, 598, 31 N. Y. Supp. 1120, affirmed 145 N. Y. 606, 40 N. E. 164.

The learned counsel for the receiver contends that by the terms of both trust agreements the Farmers' Loan & Trust Company was constituted a trustee or depositary of the funds in question, without the power to distribute them in case of the dissolution of the association, and, that being so, and the association having been dissolved, the funds should be turned over to him for the purpose of distribution, in the usual manner provided by law, to those who the court holds are entitled to receive it. It is true that the sixth clause of the first agreement and the tenth clause of the second do not contain any provision which, in express terms, confers the power of distribution of said funds, or either of them, upon the trustee or upon any other person, in the event of the dissolution of the association. If the terms of the agreements in question relating to the distribution of the trust funds are ambiguous, resort may be had to the facts and circumstances existing at the time of their execution and the purpose intended to be effected by the creation of the trust, for the purpose of enabling the court to determine what the agreement between the parties in fact was. The evidence shows that the association was incorporated for the mutual benefit of its members, and that for the purpose of carrying that object into effect two distinct funds were created out of assessments made from time to time upon its members, called "the mortuary fund" and "the reserve fund"; that these funds were required by the contracts between the association and its members to be deposited in trust for the exclusive benefit and advantage of the members contributing thereto, and to be applied exclusively to the purpose of each fund. Death claims were to be paid out of the mortuary fund, and the reserve fund, upon the dissolution of the association, to be divided among its then members proportionately to the gross amount of the assessments paid by them respectively. It is very evident that the object of taking these funds out of the hands of the association and placing them in the hands of a trustee was to protect the rights of those for whose benefit the fund was created, and so that the funds could not be used or applied by the officers of the association for any purpose other than the one for which each of said funds was created; and the trustee, having accepted the trust, was bound to see that the trust funds were not diverted from the purpose for which they were intended. Taking these facts, in connection with the fact which is apparent on the face of the trust deeds, that no designation is made in either of any person to distribute these funds, the only logical inference, it seems to me, which can be drawn, is that the intention of the parties was that the trustee was not only to be vested with the power to receive and invest, but also with the power to distribute the funds in question, whenever the time arrived to do so.

If the conclusions at which I have arrived in respect to the terms of the trust agreements are correct, the dissolution of the association, and the appointment of a receiver of its property, did not necessarily destroy the trust, and take away from the trustee the right and duty to administer it; and it is now the duty of the trustee to distribute said funds under the supervision and orders of the court. In re Home Provident Safety Fund Ass'n, 129 N. Y. 288, 29 N. E. 323; People v. Mutual Benefit L. A., opinion of Mr. Justice Patterson (unreported).

The objection which was urged upon the trial to the execution of the second trust agreement is not a valid one, for the reason that it was clearly within the power of the association to enter into such an agreement. But I am clearly of the opinion that so much of the tenth clause of said agreement which provides that on the dissolution of the association the entire reserve fund remaining after the payment of the expenses of the trustee should be applied in the first instance, and before division thereof was made among the then members of the association, as provided for in the by-laws and certificate of membership, to the payment of death losses and other indebtedness of the association, was inoperative, and is absolutely void.

It is contended that certain of the members of the association who for a period of 10 years from the date of their certificates were such members are alone entitled to the distribution among them of the reserve funds, and it is also claimed that certain of the members of the association who ceased to pay premiums after they had been members for the full term of 10 years are entitled to participate in the distribution of said funds, provided the pro rata share of said fund each year was sufficient to pay unpaid premiums for which they were liable. I have examined the brief presented by the learned counsel representing these claimants, but am unable to agree with his views respecting either of their claims. As to the first of these claims, the constitution and by-laws of the association and the certificates of membership, all of which constitute the agreement between the association and its members, do not contain any provision which, in my opinion, confers upon members of 10 years' standing the exclusive right to the reserve fund. And as to the second claim, the proof shows that the period fixed by their contracts had not arrived for the application by the association of any part of said fund to the payment of assessments or premiums accruing under the provisions of the contract, and which it appears this class of claimants failed to pay for a period of 10 years.

The plaintiff's counsel may present a decision and an interlocutory judgment in accordance with the foregoing views, with the usual notice of settlement. The question of costs and allowances will be determined upon the settlement of the final judgment.