plaintiff came in contact with it shows that it could not have been under the car at the time when the car was started. The testimony of the plaintiff is that it was dark in the pit, but this refers to the space under the car. It could not have been dark in view of the light which entered the building in that part of the pit, which was open to the light; and, even though it was dark under the car, that would not prevent the plaintiff from seeing the wall if he used his eyes. As the wall was in the light, the plaintiff was better able to discover it from his place in the dark; and if in the exercise of reasonable care he could have discovered it by the use of his eyes, then he was chargeable with knowledge of its existence, and would need no instruction to inform him that he must not stumble over it. Such seems to have been the situation fairly deducible from the evidence; and, if such be the fact, we are of opinion that the jury should have found that the plaintiff knew of or should have discovered the presence of the wall, and that if he failed to avoid it, with knowledge of its existence, his own remissness is responsible for the injuries which he received. Upon the state of this record, therefore, we are constrained to reverse this judgment.

The case of Eastland v. Clarke, supra, is not an authority against this conclusion. Therein the proof authorized the jury to find that the cellar into which the plaintiff entered was so dark as to prevent a discovery of the well, or hole in the floor, and, as it was not obvious and open, the duty of giving information concerning its existence rested upon the defendant, and that the plaintiff could not be held to have assumed the risk of its existence, or be guilty of contributory negligence in failing to discover it. The discussion already had makes the distinction between it and the present case readily apparent.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except PATTERSON, J., who dissents.

PATTERSON, J. I dissent. I do not understand the evidence as Mr. Justice HATCH does. The plaintiff descended into the pit in the rear of the car to be "wired out." The jury must have found that he did not know that the wall crossed the pit in front of the car; that he was in the dark, and his view was obscured by the car in front of him. He was not bound to anticipate that the pit might be unsafe; and, when he began work under the car, he was authorized to believe that the pit was a safe place to work in, he neither knowing nor having been informed to the contrary.

---

(88 App. Div. 597.)

PEOPLE v. UNITED STATES MUT. ACC. ASS'N OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. RECEIVER—ACCOUNTS—ORDERS SETTLING ACCOUNTS—AUTHORITY TO VACATE.
   A receiver of a corporation in process of dissolution filed semiannual accounts, copies of which were filed with the Attorney General. In each instance the accounts were sent to a referee, on whose report an order confirming the action of the receiver was made. The Attorney

General had notice of applications to send the accounts to referees, and a representative from his office appeared at some, if not all, of the hearings. The applications to confirm the reports of the referees were made on notice to the Attorney General. *Held*, that the Attorney General and his successor in office, in the absence of fraud or deception practiced by the receiver, could not demand the resettling of the accounts of the receiver.

2. SAME.

A receiver of an insurance association received from the Superintendent of Insurance securities deposited with him by the association. The securities belonged to the policy holders, who had paid all the assessments levied on their policies. The receiver, instead of distributing the securities or proceeds among the policy holders entitled thereto, used them in paying the expenses of the receivership. The receiver rendered semi-annual accounts of his proceedings, which showed in detail the money received and disbursed by him. The accounts were sent to referees, on whose reports orders confirming the action of the receiver were made. *Held*, that the policy holders entitled to the securities or proceeds could not have the orders settling the accounts set aside, though they had no notice of the proceedings resulting in such orders.

Appeal from Special Term, New York County.

Action by the people against the United States Mutual Accident Association of the City of New York, in which Henry Winthrop was appointed receiver. From a judgment vacating and setting aside orders settling the accounts of the receiver, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and O'BRIEN, JJ.

Sumner B. Stiles, for appellant.

Henry W. Killeen, for respondent Attorney General.

Raphael J. Moses, for respondents certain policy holders.

McLAUGHLIN, J. In 1895 the United States Mutual Accident Association of the City of New York, a mutual co-operative insurance company organized under chapter 175, p. 172, of the Laws of 1883, was dissolved by a judgment of this court in an action brought for that purpose by the Attorney General and Henry Winthrop Gray, the appellant herein, appointed a permanent receiver thereof. The Superintendent of Insurance of the state of New York, at the time the receiver was appointed, held securities of the value of $10,000, which had been deposited with him by the corporation in pursuance of section 215, c. 690, p. 2017, of the Laws of 1892. These securities belonged to such policy holders of the company as paid all of the assessments levied upon their respective policies from the time of issue to the dissolution of the corporation. People v. Family Fund Society, 31 App. Div. 166, 52 N. Y. Supp. 867. Subsequent to the appointment of the receiver an act was passed which directed that the securities held by the Superintendent of Insurance be transferred by an order of the Supreme Court to the receiver of the corporation, to be distributed—or the proceeds thereof—by him "among the respective holders of valid policies of such company for whose benefit and security the deposit or deposits were originally made." Chapter 322, p. 266, Laws 1896. In pursuance of this act the securities held by the Superintendent of Insurance were transferred and delivered to the receiver, but he did not distribute the same, or the

proceeds thereof, among the policy holders entitled thereto; on the contrary, such proceeds were used by him, as was substantially all of the other property of the corporation, in paying the expenses of the receivership. From the time of his appointment down to January 1, 1901, the receiver rendered semiannual accounts of his proceedings, which showed in detail the money received by him as well as the disbursements made. A copy of each account was also filed with the Superintendent of Insurance and with the Attorney General. In each instance the accounts were sent to a referee, upon whose report an order was made confirming the action of the receiver, either approving of the disbursements or authorizing and directing that certain payments be made, or both. The Attorney General had notice of these various applications to send the accounts to the respective referees, and a representative from his office appeared at some, if not all, of the hearings. The applications to confirm the reports of the respective referees were made upon notice to him. In 1902 an application was made by the Attorney General to compel the receiver to render a final account of his proceedings, in response to which the receiver filed a final account showing that all the funds received by him had been disbursed, except the sum of $2.79. The Attorney General, as well as one Moses, representing certain creditors, objected to each and every item contained in the final account. The Attorney General sought to examine the receiver as to the reasonableness of the expenditures which he had made, and the attorney for the policy holders sought to examine him as to the $10,000 received from the Superintendent of Insurance. The receiver insisted that such examination could not be had, inasmuch as his intermediate accounts, which showed how the expenditures and disbursements of these funds had been made, had been previously passed upon by the court by the orders referred to, and that he, having paid out the money in compliance with such orders, could not again be required to account for them. The receiver's contention was sustained, and subsequently a motion was made to set aside and vacate the intermediate orders settling the receiver's accounts. The motion was granted, all such orders vacated and set aside, and it is from this order that the present appeal is taken.

We think, upon the authority of Platt v. New York & Sea Beach Railway Co., 170 N. Y. 451, 63 N. E. 532, the order appealed from must be reversed. In that case a receiver was appointed in an action brought to foreclose a mortgage for the benefit of certain bondholders, and he was directed to take possession, with other property of the railroad company, of certain moneys earned by it before his appointment. Such money he was subsequently directed by an order of the court to pay to the trustees of the bondholders, after deducting the expenses of the receivership. This money belonged, not to the bondholders, but to the general creditors of the corporation, and they had no notice of the application for the order which directed payment to the trustees of the bondholders. Thereafter a general judgment creditor brought an action against the railroad for the purpose of sequestrating all its assets and appropriating the same to the

payment of the judgment, and in that action another receiver of the defendant's property was appointed, who subsequently made a motion in the foreclosure action to vacate the order appointing the receiver therein in so far as the moneys on hand at the time of his appointment were concerned, that the judgment entered therein be amended by an entry at the foot of the decree that the mortgage foreclosed was not and never had been a lien on the rents and profits which had accrued prior to the entrance and possession of the foreclosure receiver, and that receiver be ordered to pay to the sequestration receiver the amount of the money on hand at the time of the appointment of the former receiver. The motion was denied, and on appeal to the Appellate Division the same was reversed and the motion granted (63 App. Div. 401, 71 N. Y. Supp. 913); but on appeal to the Court of Appeals the same was reversed, that court holding that while the moneys sought to be reached belonged in equity to the general creditors in preference to the bondholders—and to this extent the orders were erroneous—nevertheless the same were not void, inasmuch as the court had jurisdiction of the person and subject-matter of the controversy; that the error could only be corrected by a direct appeal; and that the receiver was protected in the payments made by him in pursuance of the orders therein made. Judge O'Brien, who delivered the opinion, said:

"The receiver in the foreclosure action held the funds as an officer of the court, and was bound to obey its directions in regard to the final distribution; and it would be manifestly unjust to hold that, after accounting and paying over the money under an order of the court, the receiver was still subject to be ordered by the same court, after having obeyed the first order, to again account and respond to the sequestration receiver for the same fund. The order made upon the accounting is a protection to him against this double liability. The practice of moving before one judge at Special Term to declare void the order of judgment of another judge at Special Term is not sanctioned by any provision of the Code that I am aware of, or by any controlling authority. It virtually amounts to an appeal from one Special Term to another Special Term for a review of the first order. Moreover, the relief that was sought to be obtained by the last receiver was to hold the first one liable for moneys that came to his hands under an order of the court, and which he had paid over in compliance with its directions, and this, too, upon the ground that the first receiver never had any valid appointment as such or any authority to receive the money, the order under which he acted being void. If this contention be correct, then, obviously, the first receiver was a mere wrongdoer, and if liable at all could be held only in an action, and not in a summary proceeding like this. If he was an officer of the court, he is protected by its orders, until reversed. If he was not, then he can be subjected to liability only in the way and by the same mode of procedure that is applicable to a trespasser who wrongfully appropriates the money or property that belongs to another."

Nor do we think the Attorney General was in a position to ask that the orders settling the receiver's accounts be vacated. His predecessor in office had notice of every step taken in those proceedings. Copies of the receiver's accounts were served upon him, and he had notice of the appointment of the referees—indeed, attended before the referees or some of them, and took part in the hearings. He also had notice of the application to the court for the orders confirming the reports of the referees. It was his duty, if not satisfied with the reports of the referees passing the receiver's accounts,

to have made that fact known in a proper way to the court, and then, if not satisfied with the order made, to have appealed from it. He could not apparently acquiesce in the orders, and, after the receiver had paid out the money as sanctioned or directed by the court, come in and ask that all of the previous orders be vacated, to the end that he might make an investigation for the purpose of ascertaining whether a proper disposition had been made of the fund. The fact that the present Attorney General was not in office at the time in no way affects the question, because he is just as much bound by the acts of his predecessor as such predecessor would have been had he remained in office. It is nowhere alleged in the moving papers that the Attorney General was deceived or misled in any way, or that any fraud was practiced upon him or the court by the receiver.

The position of the policy holders is different, and, independent of authority, we should feel inclined to affirm the order so far as it affects them. They had no notice of the proceedings which resulted in the previous orders, but under the decision of the Platt Case we do not think this gives them the right to have them vacated. In the Platt Case the money which was on hand at the time the receiver was appointed in the foreclosure action belonged to the general creditors of the corporation, and they had no notice of the orders which directed that this money be paid to the trustee or bondholders. The court, nevertheless, held that the judgment creditors could not have the orders set aside, and that the foreclosure receiver was protected in the payment which he made. This decision, therefore, seems to be decisive in the present case, so far as the policy holders are concerned.

The order appealed from, therefore, must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.