Reardon v. Youngquist, 189 Ill. App. 3.

there was no necessity for inducement, colloquium, innuendo or proof of the meaning that was intended to be conveyed or what was understood by the hearers.

---

## Mary L. Reardon v. Carl O. Youngquist et al.

## On Appeal of Maurice Nelson, Receiver, Appellant, v. Emmet G. Morris, Appellee.

### Gen. No. 18,872.

1. JUDGMENT, § 96*—*conclusiveness of order entered by consent.* Parties who have consented to the entry of court orders, in pursuance of which moneys were paid out by a receiver, cannot be heard to say either that the orders were improvidently entered or that the money was improperly paid out.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. RECEIVERS, § 52*—*when not personally responsible for errors of court in directing distribution of money.* A receiver in obeying orders of a court does not become a guarantor of the correctness of the court's rulings and become personally responsible for any error of court made in directing how he shall distribute the money that comes into his hands.

3. RECEIVERS, § 30*—*when parties estopped to complain of acts done in pursuance of court order.* Where parties are given notice of various petitions of a receiver for direction and authority to pay out money for various items, they are chargeable with notice of the orders entered, and if they acquiesce in what is done by absolute silence, they are estopped from complaining that the receiver should not have credit for the money thus paid out.

4. RECEIVERS, § 51*—*when allowance for solicitor's fees improper.* An allowance to a receiver of a certain lump sum paid by him to certain attorneys for services rendered by them as his solicitors, *held* improper where the bill rendered by them for services was itemized but the charges were not, and it appeared that some of the items were for services rendered the receiver and others were not.

5. RECEIVERS, § 50*—*when forfeits right to compensation.* A receiver *held* to forfeit his right to compensation for services where, owing to his negligence, he failed to account for more than $480 in his report which, but for objections thereto, he would have improperly retained.

6. COSTS, § 21*—*when improperly taxed against receiver.* The costs of a reference to a master of a receiver's report *held* improperly charged to the receiver, where the only respect in which the report was incorrect were certain credits the receiver took for commissions and attorneys' fees and a failure to charge himself with certain moneys received; and the evidence taken and time expended on the hearing regarding those matters was a trifle as compared with that involved in determining exceptions which were not well taken.

7. MORTGAGES, § 538*—*when direction of payment to solicitor of party erroneous.* A decree in a foreclosure proceeding directing the payment of an amount found due to the holder of the legal title and the amount of the cost of a reference to his solicitor, *held* erroneous.

8. APPEAL AND ERROR, § 340*—*when receiver entitled to appeal.* A receiver is entitled to appeal from a decree requiring him to pay out of his own funds to replace trust funds that had been distributed by him pursuant to orders of the court and denying him compensation for his services.

Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and remanded with directions. Opinion filed October 7, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

**Statement by the Court.** Mary M. Shaw and James L. Shaw, her husband, being the owners of certain improved real estate in the city of Chicago, on January 26, 1909, conveyed the same to one S. W. Straus in trust to secure the payment of notes signed by them aggregating $30,000. On March 19, 1910, they conveyed the same premises to the Chicago Title & Trust Company in trust to secure the payment of two notes, each for the sum of $2,000, signed by them, payable to themselves and by them indosed. On April 11, 1910, they conveyed the same premises to Carl O. Youngquist in fee, subject to the two above mentioned trust deeds. The said Youngquist assumed and agreed to pay the obligations secured by such trust deeds. On November 11, 1910, Youngquist and wife in turn conveyed the same to Ormand B. Jacobson. Mary L. Reardon became the owner of the notes secured by the second trust deed and on January 6, 1911, default being made in the payment of the same, she filed her bill in the Superior Court of Cook county to foreclose the second trust deed and on January 18, 1911, procured an order appointing Maurice Nelson receiver of the property described in the bill of complaint, and the rents, issues and profits thereof. On January 24, 1911, the receiver filed in said cause his petition in which he represented to the court that there was on the premises in question a flat building then occupied by twelve tenants under leases providing for heat, janitor service, hot water, etc., and that in order to preserve the same and keep the same rented, it would be necessary to employ janitors, purchase coal and supplies for heat, and keep the premises in repair; that on January 26, 1911, and every six months thereafter, there would be due $825 interest on the $30,000 obligation secured by the first trust deed, and that in order to prevent the foreclosure of that trust deed it would be necessary to pay the interest promptly as it became due, and asked for authority to pay such interest and

make the other expenditures mentioned in the petition. The petition was heard on the day it was filed and an order was then entered authorizing the payment of the $825 interest instalment that would fall due January 26, 1911 and the making of the other expenditures mentioned in the petition. On April 12, 1911, a decree of foreclosure and sale of the premises under the second trust deed and subject to the first trust deed was entered, and on May 12, 1911, the premises were sold by the master in chancery to the complainant, Mary L. Reardon, subject to the first trust deed. On May 15, 1911, the master's report of sale was filed and approved and a deficiency judgment was entered against James L. and Mary M. Shaw and Carl O. Youngquist for $94.62. On the same day the receiver filed a second petition for direction, in which he alleged that the general taxes for the year 1910, amounting to $524.32, and a special assessment against the premises for paving St. Lawrence avenue, amounting to $87.43, were due and unpaid and that unless they were paid the premises would be sold to pay the same, and asked for leave to pay the same and take credit therefor in his final account as receiver. This petition was immediately heard and an order was entered, whereby the receiver was directed to pay the taxes and special assessment mentioned in his petition. On July 18, 1911, the receiver filed his third petition for direction in which he represented to the court that an instalment of interest amounting to $825 on the debt secured by the first trust deed would fall due July 26, 1911, and that in order to preserve the property for the parties in interest and to prevent the foreclosure of the first trust deed this instalment of interest should be paid promptly when due. This petition closed with a prayer for authority to pay this instalment of interest out of the funds then in his hands. This petition was heard on the day it was filed and the prayer thereof granted, and an order then entered directing the re-

ceiver to pay the instalment of interest mentioned in the petition and take credit therefor in his final account. On November 3, 1911, the receiver again petitioned the court for directions. This time he alleged in his petition that policies of insurance aggregating $24,000 on the buildings on the property in question had expired and that the same had been rewritten by the agent who first wrote the same and that the policies had been deposited with the trustee named in the first trust deed, and that unless the premiums thereon, amounting to $288, were paid at once the policies would be cancelled and the property would be left uninsured, and asked permission to pay the same. The prayer of this petition was granted on the same day the petition was filed and the receiver was ordered to pay the premiums mentioned. On January 22, 1912, the solicitors for defendants in the foreclosure suit obtained an order directing the receiver to file, within fifteen days thereafter, a report of his acts and doings as such receiver. On February 8, 1912, the receiver filed his report of receipts and disbursements from the time of his appointment to the date of the report. To this report Carl O. Youngquist and his wife and Ormand B. Jacobson and his wife on February 13, 1912, filed joint objections, and on their motion the report and the objections filed thereto were referred to a master in chancery to examine books and papers and the account and objections thereto, and take evidence ''and state an account between the said receiver and said defendants.'' On February 28, 1912, the deficiency judgment was paid by the defendants under protest and on that day on motion of the defendants the receiver was ordered to turn the possession of the premises over to Ormand B. Jacobson. On March 7, 1912, one E. G. Morris filed a petition in the cause in and by which he informed the court that he had become the owner of the fee of the premises in question, since the commencement of the foreclosure proceedings, through a deed from the defendants Ormand B. Jacobson and

his wife Olephine Jacobson, dated November 6, 1911, and that he had become the owner by assignment from them of all the right, title and interest in and to the rents and claims affecting the premises in question and prayed to be allowed to intervene in the foreclosure proceedings as a defendant, and that the objections of the Youngquists and Jacobsons to the report of the receiver be ordered to stand as his objections to that report as to all matters arising after February 29, 1912. The prayer of this petition was granted on March 7, 1912, and on that same day the appearance in writing of E. G. Morris and of William Foster Burns as his solicitor was filed in said cause. Pursuant to the order of reference of February 13, 1912, the master in chancery took a large amount of evidence and on June 4, 1912, filed his report of the evidence taken and of his conclusions of law and fact as to the matters submitted to him by said reference. This report includes the account of the receiver as stated by the master from the date of the appointment of the receiver until his discharge. The part of the report stating the account is as follows:

"16. I find that the account of the receiver should be stated as follows:

He should be charged with total receipts
amounting to........................$5,446.13
He should be credited with expenditures
as follows:

For necessary repairs, janitor
service, coal, water taxes, expenses which were reasonably
necessary to preserve the
property ...................$ 1,993.91
For interest paid on the 27th
day of January, 1911.......    825.00
For attorney fees paid........    250.00
For premiums on insurance....    100.80

Total credits ........      $3,169.71

Balance due to the owner of the
equity of redemption......      $2,276.42."

To this report the defendants and the receiver excepted separately. The defendants excepted to the report in two particulars only: First, because the master allowed the receiver credit for $825 interest paid January 27, 1911; and second, because he allowed him credit for $250 paid for attorneys' fees. The receiver excepted to the master's report as a whole and particularly: First, because the master found that the payment of $825 interest on July 26, 1911, was without the consent of the defendants; second, because the master did not find that all the payments of interest, taxes and insurance made by him were made under the orders of court after due notice to the defendants through their attorneys, and because by his report and findings he set aside the orders of court authorizing such payments; third, because the master found that the payment of the general tax for the year 1910, amounting to $524.32, and the special assessment of $87.43, was without the consent of the defendants or their solicitors; fourth, because the master did not find that the taxes and special assessments paid were liens on the property at the time of the foreclosure sale; fifth, because the master found that the order entered November 3, 1911, authorizing the payment of $288 was entered without the consent of the defendants or their solicitors; sixth, because the master found that the receiver insured the premises when the evidence showed that the trustee named in the first trust deed placed the insurance and requested the receiver to pay the premium under threat to foreclose the trust deed; seventh, because the receiver should have been credited with interest paid on first trust deed on July 26, 1911, $825; with general taxes levied for the year 1910 paid by him, $524.32; with special assessment levied against the property and paid by him, $87.43; and the balance of money paid on insurance, $259.20; eighth, because there was no evidence to support the finding of the master that the various orders of the court authorizing the receiver to pay interest, insurance and taxes

were entered without the consent of the defendants; ninth, because the master had no authority to set aside the orders of the court authorizing the receiver to pay interest, insurance and taxes; tenth, because the master failed to allow him compensation as receiver; eleventh, because the master found that the premises were conveyed to E. G. Morris when the evidence shows the conveyance to him was in the nature of an equitable mortgage.

These exceptions were all overruled by the court and a decree confirming the master's report in all respects was entered. The receiver has appealed from this decree. Errors and cross-errors were duly assigned on the record.

ELA, GROVER, MARCH & ECKERT, for appellant.

WILLIAM FOSTER BURNS, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

There is no doubt that the receiver was directed by orders of court to do everything he did do by way of the expenditure of the items of money appellees object to his being credited with, except the matter of attorneys' fees and his own compensation. There is no doubt that those of the appellees who were then defendants were notified of the applications of the receiver upon which such orders were entered. The master so found and his finding in that respect is amply supported by the record. It cannot be seriously questioned that those of the appellees who were then defendants consented through their solicitor, O'Donnell, that those various orders be entered. Benjamin F. March, one of the solicitors of the complainant in the foreclosure suit, expressly so testified, and neither O'Donnell nor any one else contradicted that testimony. No objections were made to it. There was no motion made to strike it from the record and the witness was

not cross-examined on the subject. The testimony was rather in the nature of a conclusion of the witness than as a recital of a conversation, but it was not challenged for that reason. If it had been, the conversation would undoubtedly have been given. At the end of the witness' statement that he "had discussed with Mr. O'Donnell, who was the solicitor for Youngquist and Jacobson, the advisability of the various orders and got his consent to them and explained it to him during the conversation," counsel for appellee said: "I move to strike out the conversation." To this the master aptly replied, "He hasn't given any yet." And the question was dropped. What was in the record remained in and its probative force was in no way then challenged. It is too late for appellee to complain in this court of the form of the answers of the witness.

If this evidence was not true, it was for the appellees to show its falsity. By it as it stands, the consent, through their counsel O'Donnell, of those of the appellees who were then defendants in the foreclosure suit, to the entry of the orders in question, is unmistakably shown. The finding of the master that these orders were entered without the consent of appellees or of their counsel was, therefore, manifestly against not only the weight of the evidence, but was against all the evidence in the record on that subject. We are convinced that the master must have inadvertently overlooked that testimony or he would not have made that finding. Appellee, Morris, being an assignee of the rights of those who gave the consent took only such rights as his assignors had. One who consents to the entry of an order of court cannot impeach it on any ground that existed when the consent was given. *Roby v. Title Guarantee & Trust Co.*, 166 Ill. 336; *Brown v. Schintz*, 98 Ill. App. 452; *Sammis v. Poole*, 89 Ill. App. 118; *Armstrong v. Cooper*, 11 Ill. 540; *Smith v. Kimball*, 128 Ill. 583; *First Nat. Bank of Joliet v. Illinois Steel Co.*, 174 Ill. 140. Having consented to the entry

of the orders, in pursuance of which the various moneys were paid out by the receiver that appellees are now objecting to his having credit for, they cannot be heard to say either that the orders were improvidently entered or that the money was improperly paid out.

Regardless of the matter of consent, we consider the contention of appellees that a receiver in obeying the orders of the court must, in effect, become a guarantor of the correctness of the court's rulings and be personally responsible for any error the court makes in directing how he shall distribute the money that comes into his hands, as unsound.

A receiver is an officer of the court and subject to its orders. The real custody of the property in his hands is in the court, of which he is an officer. *Coates v. Cunningham,* 80 Ill. 467. As such officer, he has no discretion or personal control over the property in his hands. *Fields v. United States,* 27 App. Cas. D. C., 433. He must obey the orders of the court so long as they are unimpeached. *People v. United States Mut. Acc. Ass'n.,* 88 App. Div. (N. Y.) 597. Expenditures made in pursuance to such orders cannot be questioned on the receiver's accounting. *People v. Manhattan Fire Ins. Co.,* 41 Misc. (N. Y.) 611; *State v. Port Royal & A. Ry. Co.,* 45 S. C. 464; *People v. United States Mut. Acc. Ass'n.,* 88 App. Div. 597. Neither can the propriety of entering the order be challenged on exceptions to the master's report on the receiver's account. *Woolsey v. Cummings Car Works,* 33 N. J. Eq. 432. Obedience to such orders is his sufficient protection. *How & Co. v. Jones,* 60 Iowa, 70; *In re Home Provident Safety Fund Ass'n.* 129 N. Y. 288; Id., 60 Hun 584; *Willis v. Sharp,* 124 N. Y. 406; *Pfeffer v. Kling,* 58 App. Div. 179, affirmed in 171 N. Y. 668; *Pierce v. Lees,* 17 App. Div. 346; *State v. Port Royal & A. Ry. Co.,* 45 S. C. 464. And this is true even if the order is erroneous and is subsequently reversed. *Platt*

*v. New York & S. B. Ry. Co.,* 170 N. Y. 451; *Coe v. Patterson,* 122 App. Div. 76, and 123 App. Div. 914; *Lesster v. Lawyers' Surety Co.,* 50 App. Div. 181.

Having had notice of the various petitions of the receiver for direction and authority to pay the various items now objected to, they are chargeable with notice of the orders entered. It was clearly the duty of appellees, if they desired to oppose the payment of those various items by the receiver out of the funds in his hands, to have opposed the entry of the order by showing to the court why it should not or could not legally be entered, or at least to have sought its vacation on motion and a showing. Failing in this they should have notified the receiver that they would hold him responsible for a misapplication of the funds, if he obeyed the order. Having done none of these things, but on the contrary having acquiesced in what was done by absolute silence, even if not by actual consent, their conduct savors of an attempt to entrap the receiver and should be and in our judgment is enough to estop them from now complaining. We think the receiver should have credit for all moneys paid out by him in pursuance to the orders of the court above referred to.

Appellees insist that the allowance to the receiver of $250 paid by him to Ela, Grover, March & Eckert for services rendered by them as his solicitors is erroneous. He was appointed receiver on January 18, 1911. The bill rendered by them for services is itemized as to the character of the services and the dates on which the same were rendered. The charges for such services were not itemized, but were placed at the lump sum of $250 for all the items. The first of these items was for drawing bond of receiver and having the same signed and approved. The date given on which this service was rendered was January 9, 1911. That was nine days before this receiver was appointed and before he was thought of as a

receiver, as is shown by the record which discloses that on that day one Howard Sweep was appointed receiver in this case, and that it was because Sweep did not qualify that on the 18th of that month Nelson was appointed. This charge, therefore, cannot have been made for services rendered this receiver. The next charge is dated January 20, 1911, and is for drawing and filing "bond of complainants" and having it approved. In what way the receiver was interested in a bond of the complainants is not disclosed. The next three items are dated respectively January 21, 23, and 24, 1911, and are for drawing a petition for leave to pay taxes, interest and incidental expenses, drawing and serving notices thereof, and drawing an order and appearing in court in that matter. These things were all such as, if done, would benefit the complainant and which, if left undone, would jeopardize her rights. Concerning this and other like petitions Mr. March, of the firm of Ela, Grover, March & Eckert, testified: "I had to do with the preparing of the petitions and notices and the serving of the notices on the various parties in the case of *Reardon v. Youngquist.* I prepared the notice in the matter of the order of January 24, 1911, * * * I had charge of the matter * * * I was attorney of record at the time. * * * Our firm was solicitors for Mary L. Reardon, the complainant," Ela, Grover, March & Eckert were not then the attorneys of record for the receiver and did not become so until they entered their appearance for him on February 19, 1912, which was five days after the last charge made in their itemized bill for services. The same can be said of the charge of May 2, 1911, which was the petition heretofore referred to, signed by the receiver for leave to pay taxes and special assessments; the charge of May 15, 1911, which was for an appearance in court filing petition and having order entered to pay taxes; the charge of July 11, 1911, which was for drawing petition for leave to pay inter-

est on first mortgage coming due July 26, 1911, and drawing and serving notices on all parties; the charge of July 18, 1911, for appearance in court, having ordered entered to pay interest on first mortgage; the charge of November 1 and 3, 1911, for preparing petition and having an order to pay insurance premiums, and the charges of January 18, 20 and 24, 1912, for drawing petition and drawing and serving notice thereof and for looking up authorities regarding an order to pay interest to become due January 26, 1912, on the first debt. A further circumstance should be noticed. The notice of the filing of the petition of May 15, 1911, for which the attorneys charge the receiver, is signed Ela, Grover, March & Eckert, *solicitors for complainant;* the notice of the petition of July 18, 1911, is signed Ela, Grover, March & Eckert, without designating for whom they were acting; and the notice of the petition of November 3, 1911, is signed Ela, Grover, March & Eckert, *attorneys for plaintiff.* In none of these matters did these attorneys appear of record as acting for the receiver.

There are a number of items in the bill rendered by the attorneys that might well be for services rendered either to the receiver or to the complainant, but there are no separate charges made therefor, and no evidence of the reasonable value of these separate services was offered. The services were all rendered before the appearance in court of these attorneys was entered for the receiver. From the face of this account for attorneys' fees in connection with the other circumstances shown by the record and above referred to, we are forced to the conclusion that the services of the attorneys were rendered for and at the instance of the complainant; that she should pay therefor out of her own funds, and that the payment thereof by the receiver was unauthorized and improper.

The receiver complains that he was not allowed $400.31 as his fees or commissions. He says in his

report that $150.31 of that amount was paid by him to agents for collecting rents, and that he retained five per cent. on $5,000 or $250, as his personal commissions. During the taking of the testimony before the master on the receiver's report, it was admitted by Mr. Eckert, then representing the receiver, that no commissions had been in fact paid by the receiver to agents for collecting rents. At the same time he asked permission of the master to show that the receiver retained the whole $400.31 as his personal commissions. In refusing this request the master said:

"Since it has been explained to me that the item in the receiver's report is erroneous, and that this witness did not pay any cash out for agent's commissions and collection of rents, I will not let you go into that question. I sustain the objection."

The receiver's report was incorrect in another respect. By it he charged himself with $5,116.13. The master found that he had received funds which he had failed to account for, and which he had misappropriated, and that because he had failed to charge himself with all the money he had received and had denied under oath before the master that he had received the omitted sums, he had forfeited his right to any compensation for his services, and that his total receipts for which he must account were in fact $5,446.13. The receiver does not deny that his report was erroneous or that the true amount for which he must account is what the master and the court found it to be; he insists, however, that the omission was not wilful, but was a mere oversight and that he ought not, therefore, to be deprived of his compensation. The most charitable view to take of his misstatements in his report and in his testimony, to the effect that he had paid out $150.31 as commissions which it is now admitted he did not pay out, and that he had received but $5,116.13, when it is now conceded he had in fact received $5,446.13, is that it was the result of his negligence in failing to keep

accurate accounts, but the fact remains that either wilfully or negligently his report was erroneous to the extent of $480.13, which but for the objections of appellees thereto, he would have improperly retained. It is as much the duty of a receiver to be careful and diligent in performing his duty and in the keeping of accurate accounts and making of accurate reports, as it is to refrain from premeditated dishonesty. When from either cause the trust funds in his hands are not properly accounted for and are prevented from reaching the hands of those entitled thereto, the receiver should not be compensated for his services. It is only for such careful, diligent and honest service as the law contemplates that a receiver should be compensated. We think this record clearly shows an instance where the receiver should be denied compensation. Such a course has been pursued under a variety of circumstances which, while not in all respects parallel to the case at bar, serve to show the trend of judicial action. See *Speiser v. Merchants' Exch. Bank,* 110 Wis. 506, 524. In *Pangburn v. American Vault, Safe & Lock Co.,* 205 Pa. St. 93, 100, the Court said:

"The reckless and negligent manner in which the receiver conducted the affairs of the trust estate and the consequent loss to the creditors legally deprived the receiver of the right to commissions. The law does not compensate an officer for inefficiency and wilful neglect of duty."

In *State ex rel. Pope v. Germania Bank of St. Paul,* 103 Minn. 129-144, the Court said:

"The question of negligence and mismanagement by the receiver should have an important bearing upon the amount of his compensation. If found guilty, the court would be justified in refusing to reward the neglect or misconduct  *  *  *."

The costs of the reference to the master of the receiver's report was charged to the receiver. To this he objects. The only respects in which, in our opinion, the report was incorrect were the credits the receiver took

therein for commissions and attorneys' fees, and the failure to charge himself with $330 of moneys received. The evidence taken and the time expended on those matters was exceedingly small, a mere trifle, compared with that involved in determining the other questions raised by the exceptions of appellees to the receiver's report that we have seen were not well taken. The receiver certainly should not be charged with the costs and expenses of defending a correct report, nor for defending a report in respect to matters correctly charged. In our judgment, the costs of the reference to the master should be paid by the appellees whose unwarranted exceptions consumed substantially all of the time and made practically all of the costs and expenses of the reference.

If the decree appealed from was in other respects correct, it is erroneous in that it directs the payment of the amount found due appellee, Morris, and the amount of the costs of the reference to Burns, the solicitor for Morris. Amounts found due should be paid to the party to whom the same is due and the decree should so provide. It is particularly inconceivable what business an attorney for one of the parties has with the costs in a case.

It is contended by appellees that the receiver had no right to appeal from this decree. The decree required of him that he pay out of his own funds about $2,500 to replace trust funds that had theretofore been distributed by him pursuant to the express order of the same court. He was a party to the decree complained of, he was aggrieved by it and was the only person who was adversely affected thereby, and was, therefore, entitled to appeal. *Union Nat. Bank of Chicago v. Barth,* 179 Ill. 83; *Granat v. Kruse,* 213 Ill. 328-332. Even if no other part of the decree so affected him as to give him a right to appeal, the part denying him compensation certainly had that effect. *Sutton v.*

*Weber,* 100 Ill. App. 360; *McAnrow v. Martin,* 183 Ill. 467, 473.

For the reasons stated the decree of the Superior Court is reversed and the cause is remanded with directions to that court to restate the account of the receiver in accordance with the views here expressed and to enter a decree accordingly.

*Reversed and remanded with directions.*