**Omar H. Wright and Oliver L. Watson et al., Complainants, v. Thomas H. Matters and Marguerite L. Matters et al., Defendants, Appellees, on appeal of Noyes L. Jackson, Receiver, Appellant.**

## Gen. No. 25,593.

1.  MORTGAGES, § 514*—*when receiver is entitled to credit for expense incurred.*  Where, in foreclosure proceedings, the court, following the provisions of the trust deed, appointed a receiver with power to collect the rents for a period of time not exceeding the equity of redemption from any sale, and to pay all taxes becoming due during that period, and subsequently ordered before the foreclosure sale, that he pay the taxes for a certain year, and the legality of his appointment and of the powers conferred upon him are not questioned until after the expiration of the period of redemption, and no attempt was made to have the order for the payment of the taxes vacated nor was any notice served upon the receiver that he would be held responsible if he obeyed, the receiver is entitled to credit in his final account for the taxes paid pursuant to the order, even though the payment was not actually made until after the foreclosure sale.

2.  MORTGAGES, § 514*—*when payment of expense by receiver is erroneous.*  Where a receiver, appointed in foreclosure proceedings with power to collect the rents for a period of time not exceeding

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the equity of redemption from any sale, pays taxes out of funds in his hands, without any order of court authorizing such payment, more than a year after the foreclosure sale and shortly before the expiration of the redemption period, he should not be allowed credit for such payment in his final account.

3. MORTGAGES, § 640*—*when receiver does not wrongfully withhold deficiency.* Where premises sold on foreclosure did not sell for an amount sufficient to satisfy the mortgage debt and the interest due thereon and the costs and expenses and the court entered a deficiency decree and the receiver appointed to collect the rents for a period not exceeding the equity of redemption from any sale, in his final report, after showing his cash balance on hand after the expiration of the redemption period, asked authority to pay the deficiency decree out of such balance, such decree should be satisfied out of the funds in the receiver's hands against the claim of a third person who was not a party to the foreclosure proceedings and claimed no interest in the premises and did not attack the validity of the deficiency decree until after the redemption period had expired, and, on his final account, the receiver cannot be held to have wrongfully and illegally withheld the amount of the deficiency decree.

4. MORTGAGES, § 524*—*when receivership terminates.* Where the order appointing a receiver in foreclosure proceedings directed him to take possession of the premises and collect the rents "for a period of time not exceeding the equity of redemption from the sale which may be had in this proceeding," and there was a deficiency and he continued to act as receiver in obedience to the order without objection being raised thereto until after the expiration of the redemption period, such receivership did not terminate on the date of the foreclosure sale, notwithstanding no order was entered extending or continuing the receivership during the period of redemption.

5. JUDGMENT, § 520*—*when judgment is res adjudicata.* Where, after the expiration of the period of redemption, certain of the defendants in the foreclosure proceeding sued a writ of error out of the Appellate Court attacking the order appointing the receiver of rents in the foreclosure proceedings in which they made and argued the point that the circuit court erred in appointing such receiver for the period of redemption and the decision was adverse to them, neither they nor their grantee or assignee can object, on proceedings to confirm the receiver's final report, that the receivership terminated on the date of the foreclosure sale and did not extend through the period of redemption, since the question is, as to them, *res adjudicata.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6.  MORTGAGES, § 540*—*what disbursements receiver is entitled to credit for.*  On appeal from a decree confirming in part the master's report on the final account of a receiver in foreclosure and sustaining certain exceptions, certain disbursements by the receiver considered and *held* improperly disallowed as having been for "betterments and not necessary repairs" and that the receiver should have received credit for such disbursements.

7.  MORTGAGES, § 526*—*what compensation of receiver is proper.* On appeal from a decree which confirmed in part the master's report on the final account of a receiver in foreclosure and sustained certain exceptions, certain allowances for fees of the receiver's solicitors considered and *held* proper.

8.  MORTGAGES, § 531*—*who may object to master's report.*  One who was not a party to the foreclosure proceedings and set up no claim to the premises until after the expiration of the period of redemption, such claim being based on a conveyance by one of the defendants in foreclosure, is properly allowed to file objections and exceptions to the master's report on the receiver's final account.

Appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1919.  Reversed and remanded with directions. Opinion filed November 30, 1920.  *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.**  This is an appeal by Noyes L. Jackson, receiver, from a decree of the circuit court of Cook county, entered June 20, 1919, confirming in part the report of a master in chancery as to said receiver's final account, but sustaining certain exceptions thereto and disallowing certain items contained in said final account.

On September 1, 1911, one Albert Atkinson, widower, to secure an indebtedness of $35,000 to Omar H. Wright, executed a trust deed to Oliver L. Watson, trustee, conveying certain premises, situated in the City of Chicago and improved by a large apartment building and known as 810-818 East 51st street, "together with all rents, issues and profits of said premises."  It was provided in the deed that the grantor should pay prior to July 1 in each year all taxes and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

assessments against the premises, and that in the event he failed to do so the grantee might pay them, and that such payment might be treated as so much additional indebtedness secured by the deed. It was further provided that:

"The grantor waives all right to the possession of, and income from said premises, pending such foreclosure proceedings, and until the period of redemption from any sale hereunder expires, and agrees that upon filing of any bill to foreclose this trust deed, a receiver shall and may at once be appointed to take possession or charge of said premises, and collect such income, and the same, less receivership expenditures, including repairs, insurance premiums, taxes, assessments and his commissions, to pay to the person entitled to a deed under the certificate of sale, or in reduction or redemption money, if said premises be redeemed."

On the same day said Atkinson executed another trust deed of the same tenor conveying the same premises to said Watson, as trustee, to secure notes for $10,000 held by said Wright. Prior to the execution of said trust deeds, to wit, on September 13, 1910, said Atkinson had executed another trust deed on said premises to one Fishburn, trustee, to secure a note of $35,000. On October 24, 1911, said Atkinson, by warranty deed, conveyed said premises to Thomas H. Matters, subject to said three trust deeds, the indebtedness secured by which Matters assumed and agreed to pay.

On October 11, 1912, a bill to foreclose said trust deed of September 1, 1911, was filed in said circuit court, in which said Omar H. Wright, said Oliver L. Watson, trustee, and one Kelley, successor in trust, were the complainants, and said Thomas H. Matters and Marguerite L. Matters, his wife, and others, were the defendants. The bill also prayed for the appointment of a receiver.

On October 14, 1912, an order was entered appoint-

ing Noyes L. Jackson as receiver, with power to take possession of the premises, and to collect the rents "for a period of time not exceeding the equity of redemption from the sale which may be had in this proceeding," and giving him the further powers "to pay all taxes," both general and special, "now due or to become due during the said prescribed period," and "to put and keep the said premises in repair," and to spend the rents, issues and profits thereof for each and every purpose aforesaid, including the running operating expenses of the improvements thereon, "holding the balance of said money   *   *   *   until the further order of the court."

Jackson immediately qualified as receiver and took possession of the premises. In the apartment building there were 288 rooms, divided into 62 apartments. Some of the apartments were vacant and the building was not paying operating expenses. The receiver was obliged to advertise, to decorate, and to put the building in good condition, in order to fill the vacancies. He lived in Belvidere, Illinois, and shortly after his appointment he, for convenience, employed the firm of Oliver L. Watson & Company to collect the rents on a 3 per cent commission basis, which firm had previously collected rents for Matters on the same terms. A new janitor was hired who assisted in making necessary small repairs and in collecting rents. The receiver supervised the repair work done, checked over the expenditures for such work, and was personally at the building once or twice every week. The net receipts from rents were increased. The receiver frequently consulted with Matters and kept him advised as to receipts and expenditures. The latter lived in Omaha, Nebraska, and sometimes the consultations were had in that city. According to the receiver's testimony Matters at no time during these interviews raised any objections to the receiver's accounts, but on the contrary complimented the receiver

on the way he was handling the building.

On April· 13, 1914, a decr,ee of foreclosure of said trust deed of September 1, 1911, was entered finding that there was due to said Omar H. Wright the sum of·$39,211, and ordering that unless payment of said sum be made within 3 days the premises be sold at public auction, and that said Wright be entitled to a decree and execution against said Matters in case of any deficiency. This decree bore the notation of "O. K. Harold V. Amberg," the then solicitor of Matters and wife. On May 14, 1914, at the master's sale, the premises were sold to said Omar H. Wright. There was a deficiency of $1,482.91, and on June 3, 1914, the sale was approved by the court and the·deficiency decree entered. The receiver remained in possession of the· premises until August 14, 1915 (the expiration of the period of redemption), without objection by any party .concerned, and continued to collect the rents and otherwise perform his duties as receiver.

On April 29, 1914, about 2 weeks before the sale of said premises, the court, on petition of the receiver, ordered that he pay the taxes on the premises for the year 1913, which he did on July 30, 1914. He had previously, by order of court, paid the taxes for the year 1911, which were delinquent. On July 22, 1915, before the expiration of the period of redemption, he also paid the taxes for the year 1914, which became a lien on May 1, 1914, but he made this payment without an order of court.

On August 17, 1915 (3 days after the expiration of the period of redemption), one Della N. Holverson, by her solicitors Henry & Robinson, filed by leave of court a petition in said foreclosure suit and a rule was entered upon said Wright, Watson and the receiver, Jackson, to answer the same. Before the answer was filed certain amendments were made to the petition, and on August 27, 1915, said Henry & Robin-

son were given leave to file their appearance in said foreclosure suit for Matters and wife, in lieu of said Harold V. Amberg, withdrawn.

In said petition, as amended, it is alleged that Holverson became the owner of the premises on March 13, 1914, and is now entitled to the possession thereof; that said Matters conveyed the same by deed to Thomas B. Moore; that said Moore and wife conveyed the same by deed, dated March 13, 1914, and recorded April 8, 1915, to petitioner; that petitioner is entitled to all the rights of said Matters and said Moore in said premises, including the rents and profits thereof, subject to the incumbrances; that the master's sale of the premises to said Wright on May 14, 1914, is void and of no effect; that said Wright, Watson and Jackson are the owners of or have an interest in the master's certificate of sale issued to said Wright on said date; that since said date said Jackson, as receiver, has collected as rent from the premises a sum exceeding $25,000, which is rightly due petitioner but which has been withheld from her; that upon an accounting between petitioner and said Wright it will appear that nothing is due him; and that, although said Wright has extended the time of redemption from the sale for a period of 4 months from August 14, 1915, upon certain terms and conditions which petitioner has complied with, yet said Wright threatens to have a deed issued to him for said premises by the master by virtue of said sale. The petitioner prayed that said Jackson, as receiver, file an account of all his acts and doings since his appointment; that all moneys in his hands be declared to be the property of petitioner and be turned over to her; that the master's certificate issued to said Wright be turned over to her; and that a master's deed be issued to her.

On September 4, 1915, the receiver filed a final report and account. This was afterwards superseded by a supplemental and amended report and account, filed October 4, 1915, by order of court.

On September 7, 1915, said Wright, Watson and Jackson (individually and as receiver) filed their joint and several answer to said amended petition in which they demanded strict proof as to Holverson's alleged interest in the premises, admitted that they had an interest in the certificate of sale issued to said Wright on May 14, 1914, alleged that a master's deed had already, on August 17, 1915, been issued to said Wright and that it on the same day had been recorded, denied that Wright had agreed to extend the period of redemption, alleged that said Jackson had filed his final account as receiver, and denied that all moneys in his hands should be turned over to petitioner or that said certificate of sale or deed to said Wright should be set aside.

In the receiver's supplemental and amended final report, filed October 4, 1915, all of his receipts and disbursements were set forth in detail, showing a cash balance on hand on August 14, 1915, of $3,906.22. He asked that out of said sum he "be authorized and directed to pay the deficiency decree of $1,482.91," which with interest thereon from May 14, 1914, amounted to $1,575.55; to pay his solicitors for services $500; and to retain for his own services $975. He further asked that the court direct to whom he should pay the balance of $855.67.

On January 11, 1916, the joint written objections of Matters and wife and said Holverson to said report were filed by Henry & Robinson, their solicitors.

In the meantime, on October 13, 1915, Matters and wife, by their said solicitors Henry & Robinson, sued out of this Appellate Court a writ of error in which proceeding they attached the order of the circuit court of October 14, 1912, wherein said Jackson, as receiver, was given power to act as receiver and to collect the rents "for a period of time not exceeding the equity of redemption from the sale"; and also attacked the validity of the deficiency decree of June 3, 1914,

entered against said Matters for $1,482.91. The action of the circuit court was affirmed on March 20, 1917. (*Wright v. Matters*, 204 Ill. App. 398.)

On October 19, 1916, Holverson, by her said solicitors, gave notice that she would appear in the circuit court and ask for an order on the receiver to turn over to her the sum of $6,196.50. This sum included the following items: (1) the $855.67 stated in the receiver's final report to be in his hands; (2) two payments of $962.50 each for 6 months' interest due on the first mortgage, made by him *after* the foreclosure sale as shown in said report; and (3) two payments of $1,735.65 and $1,680.18, respectively, for taxes on the premises for the years 1913 and 1914, made by him, as shown in said report, *after* said foreclosure sale and on July 30, 1914, and July 22, 1915, respectively.

On November 6, 1916, on Holverson's motion, the circuit court entered an order finding that said Holverson was entitled to said sum of $855.67, and directing that the receiver immediately pay the same to her and referring the cause to a master to take testimony with respect to said final report of the receiver and report his conclusions. The receiver subsequently paid said sum of $855.67 to Holverson.

On November 22, 1916, notice was given that the receiver would ask leave to pay said deficiency decree of $1,482.91.

On July 2, 1917, the receiver filed an additional supplemental report in which he claimed an allowance for additional expenditures made since he filed his report on October 4, 1915, amounting to $219.09, and also asked for an additional allowance of $750 for legal services rendered by his solicitors after October 4, 1915.

There was a lengthy hearing before the master— the testimony and exhibits covering about 500 pages. During the hearing it was stated by the solicitor for

the receiver, in substance, that as to the two payments made by the receiver *after* the foreclosure sale of $962.50 each for 6 months' interest due on the first mortgage, these payments had been made without any order of court, and without authority of law, and should be and would be refunded.

On August 16, 1918, the master's report was filed. The master had had access to the receiver's vouchers and he substantially approved the receiver's final report and account, including said item of $219.09 for additional expenditures and said item of $750 for additional legal services of the solicitors for the receiver. He also approved the payment of the amounts for the taxes of 1913 and 1914, but he debited the receiver with said two interest payments of $962.50 each. Objections had been made to the master's report and overruled and these objections were ordered to stand as exceptions before the court.

On June 20, 1919, the decree appealed from was entered. By it the report of the master was "in all things approved and confirmed except as otherwise provided in this decree." The chancellor found:

(1) "That the receiver wrongfully, improperly and illegally paid the taxes for the year 1913, in the sum of $1,735.65, on July 30, 1914.

(2) "Also the taxes for the year 1914, in the sum of $1,680.18, on July 22, 1915.

(3) "That the receiver wrongfully, improperly and illegally withheld the amount of the deficiency decree, namely, $1,482.91, entered June 3, 1914.

(4) "That the receivership herein terminated on May 14, 1914, when the property was sold pursuant to a decree herein, and that no order was entered extending or continuing said receivership.

(5) "That the receiver made permanent improvements to said property, and that said permanent improvements were betterments and not necessary repairs to said property; that the said permanent improvements and the respective amounts expended therefor were as follows, to wit:

| | | |
|---|---|---|
| Sept. 1, 1914 | $ 16.85 | Plumbing supplies |
| Aug. 6, ″ | 60.00 | Painting fire escapes |
| Aug. 19, ″ | 60.00 | Balance—painting fire escapes |
| Aug. 24, ″ | 110.00 | Painting front windows |
| Sept. 22, ″ | 94.87 | Recoating roof |
| Mar. 5, 1915 | 180.00 | One pump |
| Dec. 10, 1914 | 120.00 | Alterations—entrance |
| Dec. 24, 1914 | 25.00 | Wiring work on halls and fixtures |
| Jan. 20, 1915 | 149.60 | Wiring halls and fixtures |
| Jan. 5, 1915 | 40.00 | Cementing boiler room |
| June 5, 1914 | 15.00 | Painting screens |
| June 17, 1914 | 6.00 | Repairs to screens and painting |
| Feb. 10, 1915 | 39.60 | Painting and decorating screens |
| Feb. 26, ″ | 54.00 | Putting in pipe in boiler |
| Aug. 3, ″ | 15.45 | Plumbing supplies |
| May 8, ″ | 21.50 | Window shades |

Total......$1,007.87

(6) "That the receiver herein neglected his duty and otherwise exercised bad faith and conduct in the administration of the office to which he was appointed by the court, and that the said receiver is not entitled to the fee of $975 claimed by him nor to any fee.

(7) "That the solicitors for the receiver spent part of their time in the hearing before the master herein in defending unjustifiable acts of the receiver, but that on the other hand the solicitors for the receiver have spent a great deal of time before this court (five days) arguing on these various matters and have requested the court to allow them an additional amount; and because of that fact the court finds that one balances the other, and that therefore the same amount allowed by the master as solicitors' fees will be allowed by this court."

The foregoing holdings of the chancellor are assigned as error as well as that the court erred in permitting the solicitors for Holverson to file and argue objections to said master's report. Cross errors

are also assigned by Matters and wife and Holverson. The various points made have been elaborately argued by respective counsel.

COOKE, SULLIVAN & RICKS, for appellant; OLIVER R. BARRETT and FRANCIS L. DAILY, of counsel.

HENRY & ROBINSON, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

First. As to the payment by the receiver of $1,735.65 for taxes for the year 1913, it appears that before the foreclosure sale and on April 29, 1914, the receiver was ordered by the court to pay said taxes, and that the payment was actually made on July 30, 1914, after the foreclosure sale. No attempt was made to have this order vacated nor was any notice served upon the receiver that he would be held responsible if he obeyed it. It further appears that on October 14, 1912, the court, following the provisions of the trust deed, appointed the receiver with power to collect the rents for a period of time not exceeding the equity of redemption from any sale and to pay all taxes becoming due during that period. The legality of the receiver's appointment and of the powers conferred upon him were not questioned until the suing out of the writ of error in this Appellate Court on October 13, 1915, about 2 months after the expiration of said redemption period, and in that proceeding the action of the circuit court was subsequently affirmed. In *Rearden v. Youngquist*, 189 Ill. App. 3, 12, it is said:

"A receiver is an officer of the court and subject to its orders. The real custody of the property in his hands is in the court, of which he is an officer. * * * He must obey the orders of the court so long as they are unimpeached. * * * Expenditures made in pursuance to such orders cannot be questioned on

the receiver's accounting. * * * Neither can the propriety of entering the order be challenged on exceptions to the master's report on the receiver's account. * * * Obedience to such orders is his sufficient protection. * * * It was clearly the duty of appellees, if they desired to oppose the payment of those various items by the receiver out of the funds in his hands, to have opposed the entry of the order by showing to the court why it should not or could not legally be entered, or at least to have sought its vacation on motion and a showing. Failing in this they should have notified the receiver that they would hold him responsible for a misapplication of the funds, if he obeyed the order.''

We think that in the present case the chancellor erred in not allowing the receiver credit in his final account for this payment.

Second. As to the payment by the receiver of $1,680.18 for taxes for the year 1914, it appears that this payment was made out of funds in the hands of the receiver, without any order of court authorizing the same, on July 22, 1915, more than a year after the foreclosure sale and shortly before the expiration of the redemption period. In *Stevens v. Hadfield,* 90 Ill. App. 405, 406, it is said:

''The purchaser at the foreclosure sale took the title with all its infirmities and burdens, and it was not for the receiver to apply the rents and profits accruing during the period of redemption to the removing of such infirmities or burdens for the benefit of such purchaser.'' (Citing *Davis v. Dale,* 150 Ill. 239; *Stevens v. Hadfield,* 178 Ill. 532.)

And, in referring to a payment for taxes made by the receiver in the *Hadfield* case, it is further said (p. 407):

''The same reasons which preclude the receiver from assisting the purchaser at the foreclosure sale by an application of the rents and profits accruing during the period of redemption upon the first mortgage lien also preclude him from assisting here in the matter

of taxes. This item was also properly disallowed.''

This *Hadfield* decision was affirmed by the Supreme court (196 Ill. 253) and that court in its opinion says (p. 256):

''The receiver held the money received as rents and profits for the holder of the equity of redemption, subject only to the payment of such proper charges against it as might be allowed by the court, and not, in any sense, for the benefit of the purchaser at the foreclosure sale.''

In the present case we think that credit to the receiver in his final account for this payment was properly disallowed.

Third. As to the holding of the chancellor that the receiver ''wrongfully, improperly and illegally withheld the amount of the deficiency decree, namely $1,482.91,'' it appears that at the foreclosure sale on May 14, 1914, the premises did not sell for an amount sufficient to satisfy the mortgage debt and interest thereon due to said Omar H. Wright and the costs and expenses, and that on June 3, 1914, the court entered a deficiency decree against said Matters and in favor of said Wright. It further appears that the receiver, in his amended final report, filed October 4, 1915, after showing his cash balance on hand on August 14, 1915 (the expiration of the redemption period), asked that out of said balance he be authorized to pay said deficiency decree with interest thereon from the date of said foreclosure sale; that on October 13, 1915, Matters and wife sued out a writ of error in this Appellate Court in which they attacked the validity of said deficiency decree entered against said Matters, but were unsuccessful in that attack (*Wright v. Matters*, 204 Ill. App. 398); that the petitioner, Holverson, was not a party to the bill to foreclose; and that it was not until August 17, 1915 (after the expiration of the redemption period), that she first appeared and filed her petition in which she claimed

an interest in the premises derived by deed from Matters to Moore and by deed from Moore and wife to her, dated March 13, 1914. We think that the deficiency decree, as against any claims of Holverson, should be satisfied out of the funds in the receiver's hands. (*First Nat. Bank of Joliet v. Illinois Steel Co.*, 174 Ill. 140; *Prussing v. Lancaster*, 234 Ill. 462; *Townsend v. Wilson*, 155 Ill. App. 303; *Ellison v. Miller*, 137 Ill. App. 208.) And, under the facts and circumstances disclosed, we think that the chancellor erred in holding that the receiver wrongfully and illegally "withheld" the amount of the deficiency decree.

Fourth. As to the holding that "the receivership herein terminated on May 14, 1914," etc., we think that therein the chancellor also erred. While it is true that on or after the date of the foreclosure sale, May 14, 1914, no order was entered extending or continuing the receivership during the period of redemption, it is also true that in the original order appointing the receiver, October 14, 1912, he was directed to take possession of the premises and to collect the rents "for a period of time not exceeding the equity of redemption from the sale which may be had in this proceeding," that there was a deficiency, that he continued to act as receiver in obedience to the court's order, and that no objection was made by any one to his so continuing to act until after the expiration of the redemption period. Furthermore, in the writ of error proceeding, commenced by Matters and wife in this Appellate Court on October 13, 1915, one of the points made and argued was that the circuit court erred in appointing the receiver for the period of time mentioned, and the decision was adverse to Matters, and *res adjudicata* as to him, and we think that under the circumstances disclosed, Holverson, as grantee of Matters or assignee of his rights, should

not have been allowed to again raise the question in the present proceeding.

Fifth. As to the holding that certain disbursements of the receiver, aggregating $1,007.87, were for "betterments and not necessary repairs" to the premises, we have reached the conclusion after careful examination that therein the chancellor also erred. We think that these disbursements should be allowed the receiver as a credit in his final account. And we also think that other disbursements allowed to the receiver by the court, complained of by the appellees, Matters and wife and Holverson, were proper.

Sixth. We are of the opinion that the chancellor should have allowed the receiver the fee of $975 claimed by him. And we think that the two allowances for fees of the receiver's solicitors, viz., $500 for services from October 14, 1912 to October 4, 1915, and $750 for services after October 4, 1915, on the hearing before the master in the contest over the receiver's account, were proper, but we think that the court should have allowed in addition a reasonable fee for the services of the receiver's solicitors for the 5 days spent on the hearing before the chancellor on exceptions to the master's report. And we are of the opinion that it was proper to allow Holverson to file objections and exceptions to the master's report.

For the reasons indicated the decree of the circuit court is reversed and the cause remanded with directions to enter a decree approving and confirming the master's report, except as to the allowance to the receiver of the item of $1,680.18, payment for taxes for the year 1914, and allowing to the receiver a reasonable fee for the services of his solicitors on the hearing before the chancellor on exceptions to the master's report.

*Reversed and remanded with directions.*

BARNES, P. J., and MATCHETT, J., concur.