In the Matter of the Voluntary Dissolution of the HOME PROVIDENT SAFETY FUND ASSOCIATION of New York.

While the court has power, in proceedings for the voluntary dissolution of a corporation, to decree a distribution of its funds among those entitled thereto, it may not take from a trustee funds placed in his hands by the corporation for a specific purpose, pursuant to a contract obligation, and itself distribute them through its receiver instead of through the trustee; the latter is, notwithstanding the dissolution, entitled to the possession of the trust fund, and the authority of the court is limited to compelling the trustee to distribute the fund, as provided for by the contract, and under the supervision and orders of the court.

Where, therefore, a life insurance association, which proposed to issue certificates of membership to those becoming members, with a statement in each certificate that certain sums received thereon should be paid over to a trust company, as a safety fund for the security of the members, to be paid out by the trustee in the manner specified, entered into a contract with the trust company, by which the latter agreed to receive and hold this fund and pay it out in the manner and for the purposes so specified, *held*, that the court had no power, on a voluntary dissolution of the corporation, to order said trustee to pay over the trust fund, deposited in pursuance of the agreement, to the receiver appointed in said proceedings.

Also *held*, that the question was not affected by the fact that the agreement stated that the fund belonged to the association, subject to the execution of the trust.

*In re Atty.-Genl.* v. *G. M. Life Ins. Co.* (77 N. Y. 272), distinguished.

The trust company, in pursuance of a Special Term order, made without notice to it, paid over the fund to the receiver. *Held*, that the payment was not voluntary, so far as to preclude the company from moving the court to require the receiver to pay back to it so much of the fund as still remained in his hands.

The receiver had, in good faith and under the direction of the court, paid out a portion of the fund, before the making of the motion for an order requiring him to pay it back, in the making of which there had been some *laches* on the part of the trust company. *Held*, that he was entitled to be protected in these payments.

Payments were so made by him to the attorneys in the dissolution proceedings for their fees. *Held*, that an order was proper requiring said attorneys to pay back to the receiver the moneys so received by them, and directing him, upon receipt thereof, to pay them over to the trust company.

(Argued November 30, 1891; decided December 15, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made April 6, 1891, which affirmed in part and reversed in part an order of Special Term in the above-entitled proceeding.

Proceedings by petition to the court were taken in behalf of the trustees of the company above named, to provide for its voluntary dissolution. The matter was referred to a referee, who reported that it would be unwise for the corporation to continue business, and that it should be dissolved. A motion was made in behalf of the petitioners to confirm this report and for a final order for the dissolution of the company and the appointment of a receiver of its property, as provided by statute. The notice of this motion was served upon the attorney-general and the superintendent of the insurance department, and some others who had made themselves parties to the proceedings, but no notice of any application to the court was given the Farmers' Loan and Trust Company, one of the appellants here.

Upon the hearing of the application above noticed, the report of the referee was confirmed, the corporation dissolved, and the temporary was appointed the permanent receiver of all the stock, property, things in action and assets of the corporation. The Farmers' Loan and Trust Company was in the

same order directed to turn over, transfer and assign to the receiver all funds, securities and property received by it from the corporation, or held by it under or by virtue of any contract made between it and the corporation, in trust or otherwise, for the members of the corporation. The receiver served a copy of the order on one of the officers of the institution and demanded or requested payment by it to him of all the moneys or property it held of the dissolved corporation, in accordance with the provisions of such order. The officer of the institution upon whom the copy order was served and of whom the demand was made, complied with its terms and delivered all the securities, amounting to about the sum of $11,000, which it held *in trust* for the members of the dissolved corporation who were holders of certain of its certificates. The receiver having taken possession of such securities (which were registered United States bonds), had them transferred to his name, and subsequently they were sold under direction of the court, and a portion of the proceeds paid out by the receiver under orders of the court and in good faith, in reliance upon such authority.

A portion of the money was paid to the attorneys who had carried on the proceedings to obtain a dissolution of the corporation, for payment of their services therein, and to pay the referee's fees in such proceedings and other disbursements. Another portion was paid for counsel fees to receiver's own counsel. The amount of money paid out by him under the orders of the court was $2,852.16, and the total amount received was $11,203.44, leaving a balance in his hands of the funds received by him from the Farmers' Loan and Trust Company of $8,353.28.

Subsequently the trust company applied, on notice to the receiver, etc., for an order to compel the receiver to repay the moneys which he had obtained from the trust company, and the ground of the application was that the trust company had no notice of the application for the order made peremptorily requiring it to pay over such funds, and that it was not a voluntary payment, and that it was entitled to have the

money repaid to it to the end that its rights and those of the parties interested in the fund might be protected.

The court at Special Term ordered that the moneys should be repaid the trust company, regardless of what direction would have been made had the trust company or the beneficiaries under the trust agreement been notified and heard, and it also directed the attorneys and referees to repay to the receiver the amounts they had been respectively paid by him.

The receiver and the attorneys and referees appealed to the General Term from this order, where the provision directing the receiver to repay to the trust company was reversed, but that requiring the attorneys and referees to repay to the receiver was affirmed. The trust company and the attorneys and referees appealed from the order of the General Term to this court. Other facts appear in the opinion.

*David McClure* for The Farmers' Loan and Trust Company, appellant. The order divesting the trust company of property held by it in trust was improvidently made, the trustee not being a party to the proceeding or having notice. (*Olmstead* v. *R. & P. R. R. Co.*, 46 Hun, 552; *Parker* v. *Browning*, 8 Paige, 388; High on Receivers, § 168; *Reberson* v. *Ford*, 3 Edw. Ch. 341.) The fund in question was not the property of the Home Provident Safety Fund Association, but was specifically disposed of by said company and in the possession of the trust company, and the receiver was not entitled to possession of the property. (*In re G. M. L. Ins. Co.*, 13 Hun, 115; *Ruggles* v. *Chapman*, 59 N. Y. 163; *R. L. M. Works* v. *Kelley*, 88 id. 234.)

*George S. Hastings* for Hastings & Gleason, appellants.

*Charles A. Jackson* for Jackson & Burrill, appellants. The order made at Special Term by Mr. Justice O'Brien, dated January 9, 1891, and reviewed by the General Term, was clearly void. (Laws of 1880, chap. 537, § 4; Laws of 1882, chap. 331.)

*Nelson Smith* for respondent. The receiver, upon his appointment, was entitled to the funds in the hands of the

Farmers' Loan and Trust Company, which they voluntarily paid over to him, and the order of the General Term, reversing the order of the Special Term, which directed the return of such funds, is valid. (Code Civ. Pro. §§ 1784–1795, 1797, 1803, 2419, 2430, 2431; *Atty.-Gen.* v. *G. M. L. Ins. Co.*, 77 N. Y. 277; *Iddings* v. *Bruen*, 4 Sandf. Ch. 417; *Delaney* v. *Mansfield*, 1 Hogan, 234; *Davis* v. *Duke of Marlborough*, 2 Swans. 108; High on Receivers, § 1; *Travis* v. *Myers*, 67 N. Y. 543; *Atty.-Gen.* v. *N. A. L. Ins. Co.*, 6 Abb. [N. C.] 293; *Thompson* v. *Brown*, 4 Johns. Ch. 619, 643; *In re Hemiup*, 2 Paige, 319, 320; *Innes* v. *Lansing*, 7 id. 583; *Blodgett* v. *Kerr*, 48 N. Y. 42; 2 Daniel's Ch. Pr. 616, 617, 618; 2 Bliss's Code [3d ed.] 2003; Code Civ. Pro. § 1806.) The payment by the trust company to the receiver was made with a knowledge of all the facts, and was wholly voluntary, and hence it cannot be recovered back. (*Redmond* v. *Mayor*, etc., 35 N. Y. S. R. 917, 919; *Tripler* v. *Mayor*, etc., 36 id. 141; *Brisbane* v. *Dacres*, 5 Taunt. 143; *Silliman* v. *Wing*, 7 Hill, 159; *Preston* v. *Boston*, 12 Pick. 14.) Assuming that the Farmers' Loan and Trust Company were entitled to have the funds which they had voluntarily paid to the receiver returned to them, the Special Term order was clearly wrong in not allowing the receiver the several and respective sums he had paid and incurred between the date of his receipt of such funds and the making of the motion for the return, a period of nine months; and the order of the General Term reversing it is, therefore, clearly right. (*Lange* v. *Benedict*, 8 Hun, 362; 73 N. Y. 12; *Lange* v. *Benedict*, 99 U. S. 68; *Ex parte Lange*, 18 Wall. 165.) It does not appear that the order of the Special Term was made on notice to the attorney-general, and hence that order is void under the statute, and was properly reversed by the General Term on that ground alone. (*Grason* v. *G. W. Co.*, 38 Hun, 138; *Johnson* v. *Stagg*, 2 Johns. 519.)

PECKHAM, J.   It must be assumed that the insurance company which has been dissolved had the power to enter into the contract which it did execute with the Farmers' Loan and Trust Company, for no party to this dispute questions that fact.

In May, 1884, the trust company and the insurance company entered into an agreement by which the insurance company agreed to deposit with the trust company moneys under these circumstances : The insurance company proposed to issue to persons becoming members of its association certificates of membership, and in such certificates it would state that in consideration of the sum of ten dollars to be received on each one thousand dollars of the amount of each certificate from the person holding the same, it would pay such sum to the trust company, as trustee, for the purpose of creating a safety fund to be paid out by the trust company under the circumstances stated in the certificate. A like statement as to the payment of one dollar for a tontine pension fund was to be placed in each certificate and to be paid as stated.

These details were set out in full in the agreement with the trust company, as recitals of the obligations the insurance company was under to its members holding such certificates, and then the two companies agreed each with the other that the insurance company would pay to the trust company these moneys, and the trust company would keep and pay them in the manner and for the purposes stated in the agreement.

It was understood that the funds belonged to the insurance company, subject to the trusts provided in the agreement. The trust company was to receive, hold, manage and deposit the funds paid to it, in a manner provided for in detail. It was to invest the moneys as fast as it could in U. S. bonds, registered in its name as trustee, and accumulate the fund with the interest until it amounted to $300,000, when the further interest, in case no default were made by the insurance company, was to be paid to it. In case of failure on the part of the insurance company to perform its obligations entered into with its members who held these certificates, then the trust company was to convert the securities into money and divide the same in accordance with the recited agreement contained in the certificates and reiterated between the insurance and trust companies in their agreement.

All payments required in the agreement to be made by the

trust company to the certificate holders after default, were by the terms of the agreement to be made at the office of the trustee or of its successor.

Sufficient has been set forth in regard to this agreement to show that the trust company was the trustee of a fund provided by the insurance company, which the former company agreed to dispose of in a particular way before the default of the insurance company, while after that event the trust company agreed to apply the fund in payment of the obligations of the insurance company to its certificate holders.

The first question which here arises is as to the power of the court upon proper notice and hearing, to take this fund out of the hands of the trust company and administer it through the instrumentality of its own receiver.

If it have that power, it would seem rather superfluous to send the fund back to the trust company for the purpose of going through the mere form of notifying that company of an intended application to compel it to pay the same over to the receiver. The trust company gave notice to the receiver that it would apply for an order to repay the money to it, and in its papers the grounds of its application were set forth. The receiver appeared in obedience to the notice and set up facts which he claimed were sufficient to warrant the court in ordering the fund to be retained by him. The notice of the application and the papers used upon the hearing thereof, might, therefore, be regarded as sufficient to constitute both a notice to all parties served and a hearing of them by the court, so that the court could make a final order for the retention of the fund by the receiver, if it had the power so to do, and if in its discretion it thought it best.

It does not appear to us that the power exists. We do not question the right of the court upon dissolution of the corporation, to decree distribution of its funds among those of its creditors, or policy or certificate holders, who may be entitled to them. This is a different power from the taking away by the court from a trustee the funds placed in his or its hands for a specific purpose by the dissolved corporation and itself

distributing the fund through its receiver instead of through the trustee. The trustee is still entitled to the possession of the trust fund, as provided for in the contract which had been made, and that contract is to be the measure of its liability and the guide for the discharge of its duties. When by the dissolution of the corporation, a default has occurred in the payment of its liabilities to the holders of the certificates, the duty of the trustee under the contract still remains. The company having defaulted and dissolution having taken place, and so the authority of the court having come into play, that authority would seem to be confined to compelling the trustee to distribute the fund as provided for by the contract and under the supervision and orders of the court. I see nowhere any authority in the court to itself take possession of the fund with the payment of which the trustee was itself charged under and by virtue of a valid contract, the obligations of which still remained as against the trustee. Certainly, the right of the trustee to retain its possession is as strong where founded upon a valid contract, as in the case of a trustee created by statute.

And yet in the case of a statutory trustee, it has been held by this court several times, and after full argument, that it had no power to take the securities from the statutory trustee and pass them over to its own receiver for the purpose of distribution, according to the conditions of the trust, among the creditors of the insolvent and dissolved corporation. The case of *Ruggles, as Receiver,* v. *Chapman, as Superintendent of Insurance,* was the first of a series of cases tending in the direction above mentioned. It was first reported in 1 Hun, 324. The plaintiff was the receiver of the Eclectic Life Insurance Company, appointed by the court pursuant to the provisions of the Revised Statutes, and in the exercise of its equitable jurisdiction, and at the suit of a stockholder and creditor, to establish the insolvency of the company, and procure the distribution of its assets. By section 6 of chapter 463 of the Laws of 1853, it was provided that no insurance company, of the class of which the Eclectic was one, should be

organized with a less capital than $100,000, nor until it had deposited with the comptroller of the state the sum of $100,000 in stocks or securities, and such stocks or securities were to be held by the comptroller as security for the policy holders in that company.    But it was provided that, as long as any company so depositing these securities should continue solvent, it might be permitted to collect the interest or dividends on the securities so deposited, and from time to time to withdraw any of such securities on depositing with the comptroller other securities of like character.

Upon the creation of the insurance department, the powers of the comptroller were transferred to the superintendent of that department.    The Eclectic Company had deposited $100,000 of securities, in accordance with the section above mentioned.    It became insolvent, and at the suit of a creditor a receiver was appointed, and he demanded these securities for the purpose of making distribution among the policy holders of the company.    The superintendent refused to deliver the securities, and an agreed case was submitted to the General Term embodying these facts, and the court held that the superintendent was not bound to hand over these securities to a receiver appointed by a legal tribunal under the Revised Statutes, for the benefit of general creditors; that the securities were deposited as a special fund for the security of the policy holders primarily, and that their rights could be protected by the superintendent in the manner pointed out by the act of 1853, which is the General Insurance Corporation Act.    Upon appeal from that judgment to this court, it was affirmed, and this court held that the receiver, under the provisions of the Revised Statutes, had no authority to require from the superintendent of the insurance department the securities deposited with him by the company as security for the policy holders, pursuant to the provisions of the act above mentioned for the incorporation of insurance companies.    It was held that the courts had no power to compel the superintendent to transfer the trust imposed upon him by that act.    The opinion of the court was delivered by JOHNSON, J., who, in the course of the

argument, put this very case, and setting aside the official character and the statutory sanction of the trust, he said that " If it rested on contract alone, it is difficult to see on what footing a court could assume into the hands of receivers, property lawfully held in trust, in the absence of misconduct on the part of the trustee. Mortgagees in trust could not be compelled to yield to receivers representing creditors at large." The learned judge then stated there was a difficulty in the way of harmonizing the two independent schemes of dealing with these insolvent insurance companies, such as a proceeding by a creditor to procure a distribution of the effects of such a company among its creditors, and that provided by the statute of an action by the attorney-general for the purpose of a dissolution and such distribution. He said that the legislative power should be invoked to provide such harmony, as the court was unable to do it.

Subsequent to that decision an act was passed in relation to the same company, known as chapter 337 of the Laws of 1875, and it was claimed on the part of the receiver of the company that power was given to him thereby to take, and that it was made the duty of the superintendent to deliver to him the securities in the hands of the superintendent for distribution by the receiver according to the conditions of the trust. The Special and General Terms of the Supreme Court were of that way of thinking and directed that a mandamus should issue upon the application of the receiver against the superintendent, commanding him to deliver to the receiver the securities in question. An appeal was taken to this court, where the order for the mandamus was reversed, and it was held again that no power existed in the court to make such an order originally, and that the legislature did not confer it by the act of 1875. The position was reiterated that the superintendent was acting as a trustee and that the good faith of the state was pledged that that officer should hold the fund for the benefit of policy holders, without its being subject to the hazard and expense of a transfer to a receiver. The case is reported as *People ex rel. Receiver* v. *Chapman* (64 N. Y. 557).

SICKELS—VOL. LXXXIV.     38

The question again came before the Supreme Court in *The Matter of Guardian Mutual Life Insurance Co. and three ors.* (reported in 13 Hun, 115). That was a case where a receiver had been appointed upon the application of the attorney-general, made pursuant to the provisions of the general act for the incorporation of insurance companies, passed in 1853, and its amendments. By the 17th section of that act whenever the superintendent should think that the facts stated in that section existed in relation to any insurance company, it was provided that he should notify the attorney-general, who should apply to the court, and if upon hearing the court decided in substance that the company was insolvent, it should direct a dissolution of the company and a distribution of its effects, "including the securities deposited in the hands of the superintendent of the insurance department." The receiver applied to the court and reported that he was ready to distribute the funds, including those in the hands of the superintendent, to the policy holders, and that he was unable to proceed further until they were delivered to him. He asked that an order for such delivery be made. The Special Term granted the order. The attorney-general appealed and the General Term reversed it on the ground the case could not be distinguished from that of *People ex rel. Ruggles* v. *Chapman,* above referred to. It will be seen that this was a case where the proceeding was taken under the very act for the incorporation of insurance companies and which provided for the deposit of the securities and also provided for their distribution, and that the proceeding was by the law officer of the state. The 6th section of the act mentioned provided for the depositing of the securities with the superintendent as security for the policy holders, and the 17th section of the same act provided for the distribution of the funds of the company, including the securities in the hands of the superintendent; and yet even upon those facts the Supreme Court held that the superintendent was a trustee and that though the securities were undoubtedly to be distributed under the direction of the court, yet still it was not to be done by the receiver, but that it was to be done by the super-

intendent as such trustee, and thus two separate and independent proceedings were held to be necessary in order to distribute the funds of the insolvent company. An appeal was taken from that determination to this court and an examination of the printed record on file in this court shows that all these questions were presented fully by the briefs of the respective counsel, and after argument this court affirmed the order of the General Term and held in accordance with the line of decisions already quoted. The decision upon the appeal is reported in 74 N. Y. 617, in the memoranda, no opinion having been written.

It is unquestionable that the securities in the hands of the superintendent were always the property of the company, and liberty was given by the statute to change the securities, provided others were substituted of equal value. The provision in the argreement in question in the case at bar, that the funds belong to the party of the first part, viz., the insurance company, subject to the execution of the express trust provided in the agreement, does not alter the question as to whether a trust fund so situated passes to the receiver of the corporation or remains with the trustee. In each case, that of the official trustee and that of the trustee by virtue of the contract, the fund placed with such trustee as security was the property of the insurance company so depositing it, but in both cases it was subject to the trust created, the one by statute and the other by agreement; and I do not see that the court has more power in the case of the trustee by contract than it has in the case of the official trustee, to take from the possession of the former securities placed with it by virtue of a valid agreement which it had entered into with an insurance company subsequently dissolved by the court.

The case of *Attorney-General* v. *Guardian Mutual Life Ins. Co.* (77 N. Y. 272) is not in point. The question there was as between the right of a receiver appointed in a proceeding taken by the attorney-general to dissolve the corporation, to commence an action to recover the assets of such corporation, alleged to have been fraudulently disposed of, and to

enjoin the further prosecution of an action brought for the same purpose by a creditor or stockholder of such company before the appointment of a receiver. It was held that the receiver so far represented the creditors and stockholders of the corporation, that he had a right to commence an action to recover these assets, for the recovery of which the creditor had, before the receiver's appointment, commenced his action, and that the receiver had the right on motion, in the suit of the attorney-general, to enjoin the creditor from the further prosecution of his action. No question arose there as to the right of the trustee of a fund placed in his or its hands, to hold the fund and make distribution under the orders of the court, as is contended for herein by the trustee.

The other cases cited by the counsel for the receiver do not touch this point.

We think, therefore, that the court was without power to make the order directing the transfer of the funds from the trustee to this receiver, and that it should vacate such order and provide for the repayment to the trustee of the funds received by the receiver. Some ground is alleged for the refusal to make such an order on account of the alleged voluntary character of the payment by the trustee to the receiver. We think upon the facts found the payment was not voluntary so far as to preclude the trust company from asking for the repayment to it of the money still in the hands of the receiver.

Some embarrassment is created herein by the fact that the receiver has, while the fund was in his possession, in good faith paid out a portion of it under the direction of the court. We think he should be protected in these payments; but all the attorneys to whom any portion of the money was paid, should be compelled to pay it back to him, and upon receipt thereof, he should be directed to pay it to the trustee. That which he has paid out in other matters and under the direction of the court, he must be allowed for in his accounting with the trust company. There is some degree of *laches* existing on the part of the trust company itself. The order for the

payment by it to the receiver of the fund in its hands had been in its possession quite a number of days before the great bulk of the fund was paid to the receiver in accordance with such order. It is possible that with reasonable diligence an examination of the paper by counsel would have resulted in the discovery of the fact that there was at least great doubt whether the order of the court, made without notice to or hearing on the part of the trustee, providing for the payment of this fund to the receiver, was valid, and steps for a review of the order in some form might at once have been taken, instead of which, so far as appears, the trustee took no proceeding looking toward a review of the order and a repayment of the fund until the 3d of December, 1890, a period of ten or eleven months. Under these circumstances the court will do its utmost to protect its own officer in the payment of moneys paid in good faith under its orders, although it turn out that the payment should not have been made out of the fund. It results from these views that the trustee must be a party to any proceeding which may be taken looking to a disposition of this fund, and that it has the right to make distribution thereof under the direction of the court.

The order of the General Term should be reversed, and the order of the Special Term providing for the repayment of the whole fund by the receiver to the trustee, should be modified by protecting the receiver from a repayment of the funds he paid out by order of the court until repayment of the whole or some part thereof is made to him. No costs to any one are allowed in this court.

All concur.

Ordered accordingly.