FARMERS' LOAN & TRUST CO. v. MILLER, Alien Property Custodian, et al. (two cases).

(District Court, S. D. New York. March 17, 1924.)

1. War ⊜⇒12—Alien Property Custodian's right to property measured by enemy alien's right thereto at time of seizure.

Alien Property Custodian has no greater right to permanent possession of property seized than alien enemy would have had at time of seizure.

2. War ⊜⇒12—Normal business should not be disturbed, unless good reason and law specifically require.

Normal business should not be disturbed, unless good reason and law require, and where citizens contract with reliance on certain trustee to hold, manage, invest, and reinvest funds, neither they nor trustee should be compelled to turn over their affairs to department of government, or be deprived of their rights to do business, if it can be avoided.

3. War ⊜⇒12—Trustee of securities deposited by German insurance company to secure American policy holders and creditors held entitled to recover securities from Alien Property Custodian.

Where securities were deposited by German insurance company with American trustee to secure American policy holders and creditors, as required by Insurance Law N. Y. § 27, to so much thereof as might remain after all policy holders and creditors were paid German company had mere contingent possibility of reverter, held that, under Trading with the Enemy Act, § 9, as amended (Comp. St. Ann. Supp. 1923, § 3115½e), trustee was entitled to recover securities from Alien Property Custodian.

4. Attachment ⊜⇒49—Execution ⊜⇒31—Contingent interests not subject to attachment or execution.

Mere contingent interests are not subject to attachment in actions against person having such contingent right, and cannot be levied on under execution to enforce judgment.

In Equity. Suits by the Farmers' Loan & Trust Company, individually and as trustee under a certain indenture of trust between it and the Nord Deutsche Insurance Company, a German corporation, against Thomas W. Miller, as Alien Property Custodian, and another. On defendants' motions to dismiss complaints under Rules of Practice in Equity, rule 29. Motions denied, with leave to defendants to answer in 10 days.

See, also, 298 F. 758.

Geller, Rolston & Blanc, of New York City (George S. Mittendorf, of New York City, of counsel), for plaintiff.

William Hayward, U. S. Atty., of New York City, and Dean Hill Stanley and A. R. Johnson, Jr., Sp. Asst. Attys. Gen., for defendants.

GODDARD, District Judge. These suits are brought under section 9 of the Trading

with the Enemy Act as amended (Comp. St. Ann. Supp. 1923, § 3115½e). The suits seek to secure the return to the plaintiff of certain securities delivered to the Alien Property Custodian. The first of the above-entitled actions is brought by the Farmers' Loan & Trust Company as trustee under a deed of trust made by the Nord Deutsche Insurance Company, dated May 5, 1911, for the protection of its insurance policy holders and creditors in the United States, and the second suit as trustee under a deed of trust, dated December 17, 1913, for the protection of the holders of policies of insurance against marine risks and risks of transportation and navigation of the said company in the United States, or such pro rata share of such claims and demands as may be possibly paid with the funds so held in trust.

The Farmers' Loan & Trust Company is a corporation organized and existing under the laws of the state of New York, and is authorized to act as trustee under the deeds of trust. The matters specifically before the court at the present time are the motions of the defendant to dismiss the complaints under rule 29 of the United States Rules of Practice in Equity.

### Facts.

The general allegations of the bills of complaint are that the plaintiff, some time prior to the outbreak of the war between the United States and Germany, became trustee of the securities listed in the bills of complaint under deeds of trusts which are attached to the bills. These deeds of trusts are substantially alike. The trusts referred to were created by the Nord Deutsche Insurance Company, a corporation incorporated and resident within the German empire. The trusts were created in accordance with the provisions of section 27 of the Insurance Law of the state of New York (Consol. Laws, c. 28). The material portion of section 27 of the Insurance Law is as follows:

"Sec. 27. *Funds and Capital of Insurance Corporations Incorporated Outside of the United States.*—A foreign insurance corporation incorporated by or existing under the government or laws of any country outside of the United States, and admitted to do business in this state, shall not transact any business of insurance in this state, unless it shall have within the United States, deposited with insurance departments or held in trust as hereinafter provided, not less than five hundred thousand dollars, if a fire insurance corporation, and not less than two hundred thousand dollars, if a life or casualty insurance corporation, invested in like manner as the capital of a similar domestic insurance corporation is required to be invested.

"The capital of such foreign fire insurance corporation, doing fire insurance business in this state, or of any such company hereafter admitted to such business in this state, shall, for the purposes of this chapter, be the aggregate value of such sums or securities as such corporation shall have on deposit in the insurance department of this state, and of the other states of the United States, for the benefit of the policyholders in any of such states or in the United States. * * *"

After the outbreak of the war between the United States and Germany, the Alien Property Custodian, acting under provisions of section 7 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), determined that the Nord Deutsche Insurance Company was an enemy within the meaning of that act, and that the securities held as aforesaid by the plaintiff were held for the benefit of the insurance company, and required them to be delivered to him.

In the present suit, the plaintiff claims the right to recover the securities from the Alien Property Custodian under the provisions of section 9 of the act, in order that it may administer the trusts for the benefit of the American policy holders and secure its own fees. Section 9 (a) of the Trading with the Enemy Act permits any person claiming any right, title, or interest in any property seized by the Alien Property Custodian to institute a suit to have that right, title, and interest determined by the court.

Taking first the deed of trust of December 17, 1913, which is involved in cause No. 22–129, its provisions may be summarized as follows:

"(1) The plaintiff and its successors are to hold the property and its proceeds as a fund in trust to pay or cause to be paid all lawful and valid claims or demands of policy holders or creditors (paragraph II).

"(2) The plaintiff might sell and reinvest property in its hands with the previous consent in each case of the board of directors of the German company, or one of its managers in the United States (paragraph III).

"(3) To certify a statement of the description and amount of the trust funds

and furnish such certificate and description and the number of copies, which may be required to German company, when required to do so either by the German company or its United States managers (paragraph IV).

"(4) The plaintiff was to furnish means or securities for making deposits in other states under the insurance regulations of those states, acting under the instructions of the board of directors or the manager of the company in Hamburg (paragraph V).

"(5) Furnish the United States managers of its marine branch with means for the payment of money due to policy holders of said company in the United States (paragraph V).

"(6) The plaintiff was to pay all income and interest accruing from said trust funds and collected by it to the nominee of the German company or to one of its managers in the United States (paragraph VI).

"(7) The German company is granted power under the deed by giving notice in a specified manner to terminate the trust upon presentation of a certificate from the insurance authorities that the trust is no longer required for the protection of policy holders (paragraph VII).

"(8) The German company appoints the successor in the event the plaintiff resigns (paragraph VIII).

"(9) The German company may amend the deed with respect to any of the conditions and powers declared therein in such manner as it may see fit, provided such amendments are not in violation of law (paragraph IX)."

The trust deed in suit E22–128 is substantially the same, and no detailed analysis is necessary.

The motions to dismiss set forth several grounds, which may be summarized as follows: That the plaintiff has no interest in the said property which entitles it to a recovery; that the contract between the insurance company and plaintiff involved "trading with the enemy"; that the property is that of an alien enemy.

[1] The question now is not so much as to whether ultimately the Custodian of the German company will be entitled to anything that may be left, but whether the plaintiff now has a right to possession. It seems obvious that the Custodian had no greater rights than the German company would have had at the time of the seizure, referring not to the temporary right of possession which the Supreme Court held the Custodian had, but the right of permanent possession.

These actions must be determined upon the basis of the rights of the German company at the time of the seizure by the Custodian. If at that time the German company would have been entitled to have the property delivered to it, the Custodian is now entitled to retain the property. If, on the other hand, they were not at that time entitled to it, the Custodian must return it to the plaintiff in these actions.

The plaintiff has been performing its duties as trustee for nearly 10 years in one of these instances, and in the other for about 7 years. During that time it has made payments and investments, and generally actively performed its duties as trustee. It has a right to do business, administer this estate, and collect its fees for the past and future. It has responsibilities to the policy holders.

[2] It is, of course, desirable that normal business should not be disturbed, unless there is good reason to do so, and the law specifically requires it; and where citizens enter into contracts, relying upon a certain trustee to hold, manage, invest, and reinvest funds, safeguarding their contracts, and handling matters, neither they nor the trustee should be compelled to turn over their affairs to a department of the government, or be deprived of their rights to do business, and do it in their own way, if it can be avoided, assuming that the business and methods are proper.

[3] The government's contention, broadly speaking, is that, because a German insurance company has or may have a reversionary interest in the trust funds, the trustee should be displaced by the Alien Property Custodian, who should take over the entire fund and handle it, notwithstanding that the trustee is an American trust company of good standing, and the beneficiaries are American citizens. It seems to me that the plain and natural method, and one which would be less likely to interfere with the affairs and rights of American citizens, would be for the trustee to administer it, and when the claims of Americans have been satisfied and the trustee's fees paid, turn over the balance, if there be any, to the Alien Property Custodian, after obtaining the certificate of the insurance department of the state of New York, and settling their accounts in an orderly way. Such a plan as this would do less violence to the rights of our citizens, and so far as I can see would involve no great risk of funds reaching any one not contemplated under the Act.

In Central Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403, Mr. Justice Holmes, in his opinion, makes it clear that under Trading with the Enemy Act, § 7 (a), securities held by such a trustee should be immediately turned over to the Custodian, but states that "the present proceeding gives nothing but the preliminary custody such as would have been gained by seizure. It attaches the property to make sure that it is forthcoming, if finally condemned, and does no more."

Judge Ward, in the opinion of the Circuit Court of Appeals, in the same case (Garvan v. $20,000 Bonds, 265 F. 477), states: "Policy holders or creditors may proceed to protect their rights under section 9, or the trustees may do so for them."

No case has been brought to my attention, or have I found any, holding that the Custodian was entitled to permanently hold and administer such a trust fund. An examination of the trust instruments themselves show that the enemy company had merely a contingent possibility of reverter after an accounting, as to so much thereof, if any, as might remain after all American policy holders and creditors, whenever such claims may mature, shall have been paid and all the other conditions specified in the deeds of trust should have been fulfilled.

In the case of Simon v. Miller (D. C.) 298 F. 520, but decided in November, 1923, Judge Learned Hand, referring to a similar question, says: "Clearly this is not what was meant by the words 'for the benefit of' an alien enemy. The enemy must have some present interest in the property to subject it to capture. Here there was no more than a mere possibility. * * *".

[4] Mere contingent interests or remote possibilities are not the subject of attachments in actions against the person having such contingent right, and cannot be levied upon under an execution to enforce a judgment obtained against them. Cavalliotis v. La Fonciers, etc. (C. C. A.) 272 F. 803; Babcock Printing Press Co. v. Ranous, 164 N. Y. 440, 58 N. E. 529; Rogers Locomotive Works v. Kelly, 88 N. Y. 234; Herrmann & Grace v. City of New York, 130 App. Div. 531, 114 N. Y. S. 1107, affirmed 199 N. Y. 600, 93 N. E. 376.

The German insurance company's rights, which were all that the Custodian could seize, were subject to three conditions: (1) That all the creditors shall have been paid; (2) that the superintendents of insurance had given the necessary certificates; and (3) that the charges of the trust company had been satisfied.

Accordingly, defendants' motions to dismiss the bills are denied, with leave to defendants to answer within 10 days.