William T. Cowm, J.
Respondent, Vander Veer, a New York resident, recovered a judgment in the sum of $453,000 for serious bodily injuries sustained by him; the judgment was eventually compromised for $225,000. One of the defendants in that action, Willig & Brown, was insured by State Fire & Casualty Co., a Florida insurance company (hereinafter referred to as “ State Fire ”). By the terms of settlement, State Fire agreed to contribute as its share of the award $100,000 but its draft submitted in payment of the settlement was dishonored for lack of funds. Vander Veer attached a State Fire bank account held by Kings County Lafayette Bank in the sum of $86,000; a further attachment was levied against these same funds by respondent, Paragon Hairgoods Ltd.
*864 Petitioners, 20 European companies, original insurers of the policies in question and its representatives, D ’Amato, Costello & Shea, reacted swiftly, contesting respondent’s right to these funds on the ground that these were trust funds pursuant to an agreement entered into by the interested parties. Adverse claims to these funds were also presented by various interveners, including Broward Williams, State Treasurer, an ex officio Insurance Commissioner of Florida, who was appointed Receiver for State Fire by order of the Superintendent of Insurance of that State.
As a result of these proceedings a plethora of legal problems was uncovered. The validity of the trust agreement was put in issue and the respective rights of the parties thereunder were also questioned. The activities and the status of the foreign insurers were challenged, it being charged that these insurers were conducting the business of insurance in violation of the insurance laws of this State. Failure to comply with the Liquidation Insurance Act was raised as an issue; the prior rights of the attaching creditors are also contested.
Petitioners moved that these funds held by the Kings County Lafayette Bank (hereinafter referred to as the “Bank”) be declared trust funds and that the same be held by the Bank pursuant to a contract of deposit and in accordance with the terms and conditions of an agreement executed by the 20 European companies and State Fire’s predecessor in interest, Windsor Insurance Co., petitioner and respondent respectively. Petitioners also seek to void various levies made upon the funds in question and to vacate the orders of attachment. Petitioners further demand that the Sheriff of the City of New York be directed to deliver the funds in issue to the Bank for deposit in the special trust account.
The fund in issue was originally deposited in the Bank by the law firm of Mendes & Mount, the predecessor in interest to D’Amato, Costello & Shea, present petitioners and attorneys representing the other petitioners (European insurance companies) under a quota share reinsurance agreement (reinsurance agreement) which was entered into on July 21,1964 between Windsor Insurance Co. (Windsor), State Fire’s predecessor in interest and Mendes & Mount who were acting on behalf of the European companies.
The reinsurance agreement provided in part that Windsor would assume certain liabilities on insurance contracts issued by the European companies and enumerated by contract code number in Schedule “ D ” of the agreement. It was agreed *865 that $500,000 was payable by the European companies to Windsor on certain terms and conditions with an additional amount to be deposited in a special trust account to be held in trust by Windsor as trustee until all claims, obligations and liabilities under the agreement were discharged and liquidated but in no event beyond June 1,1971.
Article 8 of the agreement further provided that if at any time before June 1, 1971 Windsor should go into liquidation or a receiver be appointed, the balance of the funds in the trust account would be held in trust in proportion to the contributions originally made by the European companies under the agreement and that Mendes & Mount should disburse the funds in its discretion in settlement of any claims and expenses incurred under the policies set forth in Schedule “ D ” of the agreement.
Pursuant to the provisions of the agreement a special trust account entitled ‘1 Windsor Insurance Company Special Trust Account” was opened on July 28, 1964 with Kings County Lafayette Trust Co., and an initial deposit of $437,777 was made at that time.
By subsequent agreements the law firm of D ’Amato, Costello & Shea was substituted for Mendes & Mount. Windsor merged with State Fire on December 16, 1965 and by agreement dated May 20,1966 State Fire undertook to perform all the duties and obligations of Windsor under the reinsurance agreement and succeeded to all its rights and interests and assumed all of its liabilities thereunder.
On June 16, 1969 the Circuit Court of Dade County, Florida found State Fire to be insolvent and ordered its liquidation and a Receiver was appointed.
Subsequently, pursuant to the court’s direction in a prior decision on this motion, the Receiver for State Fire appeared and intervened in the action through New York counsel; Melville Shoe Corp., Dale Systems, Inc., and Martin Beilin, policyholders of insurance issued by the European companies were also permitted to appear and intervene in this action.
Issues were framed and a hearing held, as directed by the court. At the hearing the facts recited above were amplified and will be alluded to during the course of this opinion as they have a bearing on the issues.
The threshold question to be resolved is whether the activities of the parties pursuant to the reinsurance agreement were violative of statutory authority as expressed in the Insurance Law of this State.
Respondents Vander Veer and Cooper take the position that the agreement in issue was not a reinsurance agreement but *866 in actual fact it was a contract of insurance and the parties to the agreement being foreign nonlicensed companies were conducting the business of insurance in violation of law. The main thrust of respondents ’ argument is that the agreement provides that the reinsurer (State Fire) is to directly adjust the claims of the reinsured petitioners, a plan contrary to the basic nature of reinsurance.
Under a true reinsurance arrangement the reinsurer does not receive the premium from the original policyholder nor does it enter into a contract relationship with it. A contract of reinsurance is one of indemnity to the person or corporation reinsured and it binds the reinsurer to pay to the reinsured the whole or part of the loss sustained in respect to the subject of reinsurance to the extent to which he is reinsured (Allemannia Ins. Co. v. Firemen’s Ins. Co., 209 U. S. 326 ; Mutual Safety Ins. Co. v. Home, 2 N. Y. 235).
Concededly the modus operand! adopted by the parties pursuant to the agreement of reinsurance was not the common practice, but, on the other hand, neither was this an unusual arrangement. A close analysis of the document here in issue, the facts, the relevant statute and eases reveal that this was a valid and subsisting agreement of reinsurance in full compliance with the statutory provisions of the Insurance Law and the supporting authorities.
The administrative procedures adopted under the Reinsurance Agreement hereunder falls squarely within the definition cited above. (See Mutual Safety Ins. Co. v. Home, supra.) The fact that the reinsurer (State Fire) paid the claims directly does not in any way alter the fact that under the reinsurance agreement, State Fire was only an indemnitor; State Fire did not write the policies nor did it enter into any contractual relationship with the initial assureds; it was only the vehicle used to pay the claims against the policies.
The court is of the opinion that although petitioners, European companies and the reinsurer (Windsor) and substitute rein-surer (State Fire), were foreign corporations not licensed to do business here, the agreement entered into complied with the statutory provisions governing the conduct of business with unauthorized foreign insurance companies and is valid and enforceable under the laws of New York State. (See Factors Fire Ins. Co. v. Wheilden, 92 Misc. 558.)
Section 122 of the Insurance Law specifically provides that an excess line broker may place insurance with an unauthorized broker if the broker has made a diligent attempt to place the *867 full amount of insurance with an authorized broker. A foreign insurance company doing excess line insurance need not be licensed to do business in New York providing the insured has made diligent effort to secure insurance from a licensed company'. No contention is made by respondents that diligent effort was not made by the insured. Under such circumstances the foreign insurance company need not be licensed and their conduct is not violative of the Insurance Law. In the instant case all policies referred to in the agreement were excess line policies placed originally with petitioners European companies through a duly qualified domestic excess line broker, to wit, B & R Excess Line Broker.
Similarly, subdivision 1 of section 112 of the Insurance Law authorizes a party to enter into an insurance agreement with an unauthorized foreign insurer. The only prohibition contained in that section is directed at one who solicits or acts as agent for a foreign insurer. Thus while a person may not solicit or act as agent for, or procure insurance for an unlicensed foreign insurer, he may do so himself in his own behalf. In this case the original insureds and the excess line broker were seeking and placing insurance on their own behalf and not as agents or brokers for the unauthorized foreign companies and therefore do not come within the prohibition contained in section 112 of the Insurance Law. (See 1944 Opns. Atty. Glen. 255.)
Respondent State Fire questions whether the agreement in issue created a true trust. The record does not support this contention of respondent. Whether this fund is a trust fund, or, on the other hand, belongs to the general assets of the receiver depends entirely upon the facts and circumstances presented.
In determining whether or not a trust has been created courts will take into consideration the situation and relations of the parties, the character of the property and the purpose which the settlor had in making the declaration of the trust. No technical terms or expressions are needed. It is sufficient that the language used shows that the settlor intended to create a trust and clearly points out the property, the beneficiary and disposition to be made of the property. (See 1 Bogart, Law of Trust and Trustees, [1951 ed.], § 1.) There must also be a fund or other properties sufficiently designated or identified to enable title to pass and there must be actual delivery of the trust fund to the trustee.
In the case at bar, we have explicit proof of the creation of a trust, for there is the unequivocal declaration of the intention *868 to establish, a trust fund (Reinsurance Agreement, art. 7) buttressed by the provisions of article 8 of the agreement which provides a trust of the balance of said funds on deposit to be administered and settled by D’Amato, Costello & Shea, successors in interest to Mendes & Mount. The beneficiaries are designated with sufficient clarity to be reasonably capable of identification. Reading the agreement as a whole there can be no doubt as to who the settlor intended the beneficiaries to be. The reference to Schedule “ D ” throughout the agreement is a clear designation of those domestic insureds as beneficiaries under the agreement. A beneficiary need not be named but may be designated by description. (1 Restatement, Trusts, 2d, § 112 comment b.) Bogart states that a beneficiary may be designated ‘ ‘ by way of reference to family kinship, legal relationship, the occupancy of a certain position at a fixed time, a reference to another document or the performance of certain acts in the past.” (See Bogart, Law of Trusts and Trustees, [1951 ed.], § 162, p. 89.) It is clear that the interveners (the domestic insureds) designated in Schedule “ D ” are the direct beneficiaries under the trust and their claims follow the trust funds and are first entitled to be paid from the funds. (People v. Empire Mutual Life Ins. Co., 92 N. Y. 105 ; Matter of League Union Welfare Trust Fund [Dairymen’s Assn.], 53 Misc 2d 1023.)
The court finds no merit in respondents’ contention that the trust established violates the rule against perpetuities. Under the explicit language of the reinsurance agreement, the rights of the beneficiaries were not contingent, but immediately vested and only the right to claim under the trust was postponed which takes the instrument outside of the prohibition of the rule. (See Bogart, Law of Trusts and Trustees, § 214.)
Respondent State Fire argues that regardless whether the trust account is characterized as a trust fund or a security arrangement, it is entitled to the balance in that account. It takes the position that it disbursed in payment of claims and expenses more than was deposited in that account. It is alleged that $930,687.38 was deposited into the account and that claims and expenses paid by State Fire-Windsor up to September 30, 1966 and reimbursed from the Special Account amounted to $843,934.82. Additional payments made by State Fire-Windsor from September 30, 1966 through April 30, 1968, not reimbursed from the special account, amounted to $298,843.85 making an aggregate of $1,142,778.67. In addition it is alleged that State Fire paid out in claims and expenses from May 1968 to *869 the date of the appointment of the Receiver the sum of $29,593.05. Thus it is claimed even excluding the unallocated expenses, the total paid by State Fire-Windsor in claims and expenses was $1,172,371.72 far in excess of the $930,687.38 deposited in the Special Account. State Fire takes the position that since it was not reimbursed from the special account for any part of the sums paid by it after September 30, 1966, the balance remaining belongs to the Receiver. The record does not support respondent’s contention. Moreover, precedent is unrewarding because this is a unique contract and its interpretation determines the result of this part of the motion. Analysis of the testimony at the hearing and of various exhibits submitted reveals that in addition to the funds deposited under the trust account ($930,687.38) a further sum of $500,000 was also transferred to respondent’s predecessor in interest, Windsor. Respondent State Fire makes a strained attempt to show that the $500,000 originally deposited was separate and apart from the trust account and not to be considered in any accounting of that fund. Respondent argues that it is clear from a reading of the entire instrument that the $500,000 was to be paid to Windsor for certain purposes and that it was only the balance in the trust account from which disbursements were to be made to the reinsurer.
It is apparent that the $500,000 transferred to the reinsurer under article 7 of the agreement was also to be used for the payment of claims arising under the various contracts of insurance which was the subject of the agreement. Article 7 specifically provided: “It is further understood and agreed that with respect to the premium paid under SCHEDULE B and required to be deposited in the manner provided in above that MESSRS. MENDES & MOUNT is authorized by THE COMPANIES to pay over to THE REINSURER after liability under this Agreement has attached and on receipt of said funds the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000) for the immediate use of the said REINSURER to effect payment of claims and losses and loss adjustment expenses arising under the said contracts ”. (The same contracts referred to throughout the agreement.) There is nothing in the agreement to suggest that this fund was to be segregated and used for any other purpose. Any other interpretation would do violence to the expressed intent of the parties. Adding $500,000 to the .amounts deposited in a special trust account and giving respondent credit for claims paid through the date of the appointment of a receiver and subtracting the $86,752.62 held in the trust *870 fund, respondent would still hold a substantial balance over and above the amount held in the trust account. Accordingly, respondent State Fire’s claim that it is entitled to the balance of the trust fund regardless of its legal form must be rejected.
State Fire argues that the reinsurance agreement was an illegal attempt to circumvent the provisions of the Uniform Insurers Liquidation Act found in sections 517 to 524 of the Insurance Law. It is contended by these respondents that the agreement favors certain policyholders over other creditors contrary to the intent of the Liquidation Act. Respondents also take issue with those provisions of the agreement which leave the administration and distribution of the funds in question in the hands of persons other than those legally constituted by statute. The court finds no merit to petitioners’ contentions. The Liquidation Act does not apply to those cases where an insured voluntarily deposits funds to be held subject to the provisions of a deed of trust. (Robinson v. Mutual Reserve Life Ins. Co., 162 F. 800, 802.) Moreover, the courts have recognized and approved an arrangement whereby an insurer creates a trust for the specific benefit of its policyholders. (Matter of Home Provident Safety Fund Assn., 129 N. Y. 288 ; Robinson v. Mutual Reserve Life Ins. Co., supra.)
The court also rejects respondents’ suggestion that the fund in issue should be administered by the Receiver under the supervision of the Florida court. Under the circumstances, the court does not possess the power to relegate the administration of the funds to the Receiver in Florida. There is a valid trust placing possession of the funds in the trustee and the instrument of trust defines the liabilities and rights of the trustee and provides the guidelines for the discharge of its duties and therefore the court may not tamper with these rights. (See Matter of Home Provident Safety Fund Assn., 129 N. Y. 288, supra.) Moreover, the funds are located here as is the custodian and trustee of those funds, which, as a practical matter would facilitate the administration of the trust.
Accordingly, the court finds that the quota share reinsurance agreement established a true trust and the funds so deposited belong to the trustee-petitioner D ’Amato, Costello & Shea to be administered by them as provided thereunder. The funds being designated trust funds are not subject to attachment and the rights of attaching creditors must be dismissed. (See Wulff v. Roseville Trust Co., 164 App. Div. 399 ; Farmers’ Loan & Trust Co. v. Miller, 2 F. 2d 493.)
Judgment in favor of petitioners granted in all respects.